AUGUST TERM, 1886.                189

Union National Bank of Oshkosh vs. Hicks, Adm'r, etc.

UNION NATIONAL BANK OF OSHKOSH, Appellant, vs. HICKS, Administrator, etc., Respondent.

*October 18 — November 3, 1886.*

ESTATES OF DECEDENTS: PRACTICE: EVIDENCE. *(1, 2) Setoff of after-acquired claim against debt to insolvent estate: Counterclaim improperly interposed: Withdrawal: Estoppel: Costs on appeal to circuit court. (3) Transactions with deceased person: Objection.*

1. A person indebted to an insolvent estate cannot purchase a claim against such estate and make it available as a setoff.
2. A person having a deposit in a bank died insolvent. After his death the bank purchased a note made by him for an amount greater than the deposit and presented it as a claim against the estate. The administrator pleaded the deposit as a counterclaim. The county court allowed the counterclaim and gave judgment in favor of the bank for the balance. On appeal by the administrator the circuit court permitted him to withdraw the counterclaim, and rendered judgment for the bank for the full amount due on the note, without costs to either party. *Held:*
   (1) The counterclaim was improperly interposed, and there was no error in permitting it to be withdrawn.
   (2) The bank should have been allowed costs in the circuit court.
3. An objection to evidence of personal transactions with a deceased person, under sec. 4069, R. S., should be to the competency of the witness.

APPEAL from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

R. P. Eighme, the defendant's intestate, died in the fall of 1883. At the time of his death he held a certificate of deposit of $100 against said bank, and also had a credit for a cash deposit in said bank of $97.11, both of which came into the hands of the administrator. At the time of his death, S. M. Hay & Bro. held a note against said deceased, executed January 3, 1876, due six months after date, given for $300, with interest at the rate of ten per cent. per annum until paid. Soon after the death of said Eighme, R. C. Russell, cashier of said bank, with knowledge of said death, purchased said note of said S. M. Hay & Bro., and thereupon discounted or sold the same to the bank. March 26, 1884, said bank duly presented said note to the county court as a claim against said estate. At the hearing thereof, August 5, 1884, the administrator objected to the allowance of said claim, and pleaded thereto a general denial, the six-years statute of limitation, and the said certificate of deposit and said credit for cash deposited in said bank, amounting to $197.11, as counterclaims. The county court found, in effect, that there was due the plaintiff the amount of said note and interest, less $30 paid April 6, 1878, and said counterclaims. Judgment being entered thereon in favor of the bank and against said administrator, the latter thereupon appealed to the circuit court.

Upon the trial in the circuit court the administrator asked leave to withdraw his counterclaim, and the same was taken under advisement. At the conclusion of the trial the court found the facts substantially as stated, and also that said estate was largely insolvent; that six years had not elapsed from the date of said note to the time of such payment, nor from the time of such payment

AUGUST TERM, 1886.  191

Union National Bank of Oshkosh vs. Hicks, Adm'r, etc.

to the filing of said claim. As conclusions of law, the court found, in effect, that the bank was entitled to recover from the estate $538.75; that the counterclaims for the amounts due from the bank to the estate were not proper counterclaims in this action, and accordingly the administrator was entitled to withdraw the same after having appealed to the circuit court; that neither party was entitled to costs on such appeal; and that that part of the order of the county court allowing the claim of the bank should be affirmed, and that part of said order which allowed the counterclaims of the adminstrator should be reversed and set aside. Judgment was entered thereon accordingly. From so much of said judgment as disallowed the counterclaims and allowed the administrator to withdraw the same, and from so much as refused costs to either party, the plaintiff appeals.

For the appellant there was a brief by *Houghton & Haddock*, and oral argument by *Mr. Houghton.*

For the respondent there was a brief by *Hicks & Phillips*, and oral argument by *Mr. Phillips.*

CASSODAY, J. Upon the death of a person his property, not exempt, at once becomes " chargeable . . . with the payment of *all* his . . . debts," whether he dies testate or intestate. Secs. 2270, 2277, 2281, R. S. If he leaves a will, then, subject to the payment of his debts, the rights of parties under it become vested immediately upon his death. *Scott v. West*, 63 Wis. 552; *Newman v. Waterman*, 63 Wis. 616. If he dies intestate, his personal property, not exempt, must be applied and distributed in the manner and in the order prescribed by statute. Sec. 3935, R. S. Out of such personal estate certain allowances are to be made to widow and children, and only the excess is to " be applied to the payment of the debts of the deceased, with expenses of administration and funeral charges." *Ibid.* The same is true, to

a certain extent at least, where the deceased dies testate. *Ibid.; Baker v. Baker*, 57 Wis. 382; *Estate of Henry*, 65 Wis. 551.

Thus it appears that immediately upon the death of Eighme the rights of all his creditors at once became fixed, and the laws of distribution at the same time fastened down upon his entire estate. This being so, the equality of rights among the respective creditors at large is apparent. The estate being largely insolvent, it necessarily follows that such creditors could only receive a certain per cent. upon their respective claims. Thus it appears that at the time of the intestate's death, S. M. Hay & Bro., who then held the note in question, were only entitled to a certain per cent. of the amount due thereon, and the claims against the bank were assets belonging to the estate and in which all creditors were interested. To say that such per cent. could be increased, after such death, by a transfer of the note to the bank which was indebted to the estate, is in effect to say that the rights of all the creditors were not equal nor fixed by law on the death of the intestate. This would be contrary to the well-established rule. Accordingly it has often been held, in effect, at common law and under statutes similar to ours, to be contrary to public policy to allow a person indebted to an insolvent estate to purchase a claim against such estate after the death of the intestate and make it available as a setoff in order to escape payment of his own debt. *Root v. Taylor*, 20 Johns. 137; *Irons v. Irons*, 5 R. I. 264; *Haugh v. Seabold*, 15 Ind. 343; *Cook v. Lovell*, 11 Iowa, 81. So it has been held to be inconsistent with the principles of sound policy to permit an executor to buy up claims against creditors of an estate for the purpose of obtaining a setoff in equity. *Mead v. Merritt*, 2 Paige, 405; *Hill v. Tallman*, 21 Wend. 674.

The manifest reason for the rule against allowing such setoffs in case of insolvent estates, is that it contravenes the

policy of the statutes of distribution, which is equality of rights among general creditors. True, as claimed by counsel for the bank, when a creditor against whom the deceased had claims shall present a claim to the county court, the administrator must exhibit the claims of the deceased in offset to the claims of the creditor, and the court is then to ascertain and allow the balance against or in favor of the estate as the same shall be found. Sec. 3841, R. S.; *McLaughlin v. Winner*, 63 Wis. 127; *Richardson v. Parker*, 2 Swan, 529. This is on the theory that in equity, upon the death of the intestate, such mutual indebtedness *as then existed* is deemed to be adjusted, and the true balance is to be found by the court against or in favor of such estate as the case may be. As indicated in the Rhode Island case cited, such right of setoff in case of insolvent estates ".grew up under an equitable construction of the statute relating to the distribution of such estates, following the policy of that statute," and hence the general statute of setoff should not be extended by construction so as to contravene that policy.

In furtherance of such equitable construction of the statutes of distribution, and the policy of equality among creditors of such estates, and the adjustment of mutual claims in favor of and against such estates as of the time of the intestate's death, our statute further provides, in effect, that in actions brought by administrators demands existing against their intestates "and belonging to the defendant *at the time of their death*, may be set off by the defendant in the same manner as if the action had been brought by and in the name of the deceased." Sec. 4260, R. S. This statute goes to the rights of the parties, and it is not merely dependent upon a suit being brought by the administrator. Had S. M. Hay & Bro., at the time of the intestate's death, been indebted to the estate, as the bank was, and then retained the note, and presented the same as a claim against the

estate, such indebtedness would have been a proper setoff, under the statutes and authorities cited. But, as observed, that furnishes no reason for holding that the claim of the estate against the bank was a proper setoff to the note purchased by the bank after the intestate's death, and then presented against his estate. It is not to be considered on the theory of counterclaims *inter partes,* but rather as a claim against an estate in which many may be interested, and made up in part by the indebtedness of the bank to the intestate.

The mere fact that the administrator improperly interposed the setoff in the county court did not estop or preclude him from withdrawing it after the case was appealed to the circuit court. It would have been unjust to other creditors, not parties to the litigation, for the circuit court to have allowed such setoff.

2. Independent of the payment of April 6, 1878, the note would have been barred by the statute of limitations. It is claimed that S. M. Hay, one of the payees of the note, was an incompetent witness to prove such payment under sec. 4069, R. S. Had a proper objection to his competency to testify on that subject been taken in time, it might have presented a serious question, as the law now reads. But no such objection was taken. It was apparent that the bank derived its interest or title to the note through or under Mr. Hay. His name appeared upon the face of the note. He testified, without any objection, that the interest was paid at the time named and while he was the owner of the note personally; and then, without objection, testified that such payment was made by the intestate himself. Then for the first time the respondent " objected to the testimony as incompetent and irrelevant." It was certainly relevant, and in fact competent. If there was any incompetency, it was in the witness to give the testimony and not in the testimony given. Besides, as the estate has not appealed, it may be doubtful whether that question is before us.

3. Upon the whole record, we think it was error not to allow the bank costs against the estate. Such costs are clearly contemplated by the statutes. Sec. 2932, R. S.; *Hei v. Heller*, 53 Wis. 415; *Ladd v. Anderson*, 58 Wis. 391. The appeal from the county court was necessitated by the improper interposition of a so-called counterclaim on the part of the estate. After having appealed to the circuit court, and thus subjected the bank to a new trial upon which it obtained judgment for an increased amount, we think the bank was fairly entitled to costs, notwithstanding the withdrawal and disallowance of the counterclaim. The only proper controversy was as to the allowance or disallowance of the claim of the bank, and it succeeded.

*By the Court.*— That part of the judgment of the circuit court appealed from is affirmed upon the merits, and reversed as to the costs, and the cause is remanded for further proceedings according to law.· No costs are allowed to either party in this court, except the appellant must pay the clerk's fees.