LARSON, Plaintiff, vs. MENNES, Executor, and others, Defendants: CALDWELL & GATES COMPANY, Appellant, vs. MENNES and others, Defendants, Interveners, and Respondents.

*May 13—June 21, 1926.*

*Wills: Estates of deceased persons: Real estate vests in residuary legatee: Divestiture if needed to pay debts of deceased: Value added by residuary legatee: Right to accounting: Creditors: Mechanic's lien claimants: Appeal: Failure to settle bill of exceptions.*

1. Upon the death of testatrix, title to real estate, which passed under the will to the residuary legatee, vests in the latter immediately, subject to being divested if it becomes necessary, in the course of administration, to sell real estate to pay debts and specific legacies. p. 554.
2. The rights of creditors in the estate of the testatrix vest at the time of her death. p. 554.
3. A mechanic's lien for the value of materials furnished to the residuary legatee to construct a house upon the property of the testatrix, and the lien of a mortgage given by him, at-

tach only to the estate or interest of the residuary legatee, and are divested when his interest is divested.  p. 555.

4. When the residuary legatee is divested of his estate, in the course of administration of the estate of the deceased, to pay debts and specific legacies, and he has added value to the property, equity recognizes his right to an accounting for the enhanced value.  p. 555.

5. In such case his creditors who supplied the materials and money which made possible the enhanced value are subrogated to his right to the proceeds on an accounting sufficient to satisfy their claims.  p. 556.

6. The supreme court is bound to accept the findings of fact of the trial court unless the proof on which a review is asked is incorporated in a bill of exceptions.  p. 556.

APPEAL from a judgment of the county court of Columbia county: A. F. KELLOGG, Judge.  *Reversed, with directions.*

In an action to foreclose a first mortgage the defendant and appellant interposed a cross-complaint to foreclose a mechanic's lien.  Appeal from that portion of the judgment which gave the unsecured creditors and legatees of the deceased mortgagor a preference over the lien claimants in the distribution of the proceeds of the sale on foreclosure. The first mortgage was given by Anne Mennes to the *First National Bank of Rio* upon two lots, hereafter referred to as lots 6 and 7.  There was a house on lot 6, lot 7 was vacant.  After giving the mortgage Anne Mennes died testate.  Her husband, *Ole Mennes,* was named executor and made residuary legatee by the will.  Decedent's entire estate consisted of three lots, two of which are referred to above. The intervening defendants all had claims against the estate of Anne Mennes, which were allowed by a judgment entered April 11, 1922.

The court found that early in May, 1922, *Ole Mennes* personally, not as executor, entered into a contract with the appellant *Caldwell & Gates Company* to supply materials with which the residuary legatee constructed a house upon

lot 7; that the *Caldwell & Gates Company* has a valid me-
chanic's lien upon lot 7 for the value of such materials,
and that on September 4, 1922, *Ole Mennes* personally
made, executed, and delivered a mortgage on said lot 7 to
the *First National Bank of Rio* to secure a note for $1,800
which represented money loaned to him personally, a part
of which it is admitted was used to construct the house on
said lot 7. The creditors of the deceased, the lien claimant,
and the bank holding this $1,800 mortgage were all made
parties to the foreclosure action and judgment was entered
determining the rights of all parties.

For the appellant *Caldwell & Gates Company* there was
a brief by *Rogers & Rogers* of Portage, attorneys, and
*Gilbert, Ela, Heilman & Raeder* of Madison, of counsel,
and oral argument by *Emerson Ela* and *H. B. Rogers*.

*L. C. Gunderson,* attorney and guardian *ad litem,* and
*Geo. B. Parkhill,* of counsel, both of Madison, for the re-
spondents *Thelma* and *Selvin Mennes*.

For the respondents *Jackson* and others there were briefs
by *Stroud & Stroud* of Portage, and oral argument by
*P. C. Stroud*.

For the respondent *First National Bank of Rio* there
were briefs by *Bogue & Sanderson* of Portage, and oral
argument by *David Bogue*.

STEVENS, J. The estate of the deceased was insufficient
to pay her debts and the amounts due for materials sup-
plied and money advanced by the bank for the purpose of
constructing a house on lot 7. The parties stipulated that
lot 7 was worth $300 at the time of the death of Anne
Mennes, before the house was built thereon. The parties
agree that all property left by the deceased, including lot 7
at the agreed valuation of $300, must be devoted to the
payment of the debts of the deceased, and that no part of
the value of the property owned by Mrs. Mennes at the

time of her death can be devoted to the payment of any obligations incurred by *Ole Mennes* after her death for the purpose of constructing the house on lot 7.

No question was raised upon this appeal as to the rights of the first mortgagee. The only controversy is between the mechanic's lien claimant and the second mortgagee on the one hand and unsecured creditors and legatees on the other hand over the disposition of funds remaining after the amount due upon the first mortgage has been paid. This controversy involves the disposition of the fund of $2,900 derived from the sale of lot 7 and the house thereon by deducting from the total selling price the expenses of the sale and $300, the agreed value of the lot. The creditors of the estate claim this fund on the theory that the house was built by *Ole Mennes* in his capacity as executor. This position is untenable because the court found that the house was built and the obligations incurred by the residuary legatee personally and not as executor. No part of the assets of the estate was used in the construction of the house. Those who sold materials and advanced money to build the house have no claim against the estate or the $300 deposited in court to represent the value of lot 7. The $300 belong exclusively to the creditors of the deceased.

Immediately upon the death of Anne Mennes the title to her estate vested in her husband as residuary legatee. The rights of the creditors of the deceased likewise vested at the time of her death. *Scott v. West,* 63 Wis. 529, 552, 24 N. W. 161, 25 N. W. 18; *Union Nat. Bank v. Hicks,* 67 Wis. 189, 191, 192, 30 N. W. 234. This title so vested in the residuary legatee was subsequently divested when in the course of the administration it was ascertained that the real estate of the deceased must be sold to pay debts and specific legacies. The fact that these debts entirely exhausted the estate of the decedent did not create an intervening estate. This fact simply resulted in divesting the estate

which had vested in the residuary legatee at the time of death.

The situation here presented is entirely different from that which arises when the value of an estate is increased during administration by the use of funds belonging to the estate or through such cause as an advance in the value of the property. Here the enhancement in value was caused solely by the erection of the house, which was made possible by the money and the materials procured by the residuary legatee personally for which no claim is made against the property of the deceased and for which the estate cannot be made liable in any way. Under such circumstances, as between unsecured creditors and legatees and those whose money and materials have enhanced the value of lot 7, it is inequitable to give to the unsecured creditors of the estate the value added to lot 7 through the materials supplied and money advanced to construct the house thereon. To do equity the court must devote the full value of the estate of the deceased at the time of death to the payment of claims against her estate. The value added to the property of the deceased after death must be devoted to the payment of the claims of those who supplied the materials and the money that added this value. This enhanced value is not and never was the property of the deceased and never became a part of the estate of the deceased.

The mechanic's lien and the lien of the mortgage given by *Ole Mennes* attached only to the estate or interest of the residuary legatee. When the estate of the residuary legatee was divested in the course of the administration of the estate, the mortgagee and the lien claimant were likewise divested of all claims to the interest of the residuary legatee in lot 7. But when a residuary legatee is divested of his estate, after he has added value to the property, equity recognizes his right, as against unsecured creditors, to an accounting for the value which he added to the lands of

the estate, and his creditors who supplied the materials and the money which made possible this enhanced value are subrogated to his rights to such an accounting, so far as the proceeds of such accounting are required to satisfy their claims. In working out the equities of the parties, the priorities which existed when these liens attached to the estate of the residuary legatee should be recognized in order that the rights of the parties may be preserved as they would have existed if the estate of the residuary legatee had not been divested.

Counsel for the respondent bank contend that the mechanic's lien of the *Caldwell & Gates Company* is not valid because the requirements of the statutes were not complied with in the preparation and filing of the claim for lien. That question is not presented by the record because there is no bill of exceptions. The fact that the findings recite that the claim for lien is a part of the record does not change the rule that this court is bound to accept the facts as found by the trial court unless the proof on which a review of these findings is asked is incorporated in a bill of exceptions.

Under the judgment entered by the county court the proceeds of the sale of the house built by the residuary legatee upon lot 7 were subjected to the payment of debts and legacies before they were devoted to the payment of the claims for materials used and money advanced to build the house. This was error. The debts of the deceased and the specific legacies would have entirely exhausted the fund derived from the sale of the house on lot 7, thereby depriving the lien claimant and the mortgagee of their right to share in the enhanced value which they added to lot 7. The judgment must therefore be reversed and a new judgment entered which will provide that the proceeds of the sale of lot 6 and $300, the value of lot 7, be devoted to the payment of the principal, interest, and costs on the foreclosure of the mortgage given by Anne Mennes, that this fund be then

21]　　　JANUARY TERM, 1926.　　　557

Central Wis. P. Co. v. Wis. T., L., H. & P. Co. 190 Wis. 557.

used to pay the expenses of administration, funeral expenses, and debts allowed against the estate and legacies in the order fixed by the judgment. No costs will be taxed for or against the creditors or the legatees or the estate. The judgment will provide that the $2,900 enhanced value be devoted *first* to the payment of the sum due the *Caldwell & Gates Company* with interest, and *second,* to the payment of the mortgage of the *First National Bank* given by *Ole Mennes,* together with interest. The costs of the bank on its claim under the mortgage given by *Ole Mennes* and the costs of the *Caldwell & Gates Company* will be taxed against *Ole Mennes* personally, but not paid out of the fund in court, unless there is a surplus after paying the full amount of principal and interest due the *Caldwell & Gates Company* and the bank. No costs will be taxed in this court. The intervening creditors will pay the fees of the clerk of this court.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to enter judgment in accordance with this opinion.

ROSENBERRY, J., dissents.