447

Estate of Richardson: Richardson and another, Respondents, vs. Richardson, Appellant.

*December 8, 1936—January 12, 1937.*

448

For the appellant there was a brief by *Kopp & Brunck-horst* of Platteville, and oral argument by *L. A. Brunckhorst.*

For the respondents there was a brief by *McDaniel & Olson* of Darlington, and oral argument by *C. F. McDaniel.*

FRITZ, J. The appellant, Mark Richardson, Jr., contends that the county court erred in several respects in a final judgment entered on July 15, 1936, in the estate of Mark Richardson, who died intestate on January 15, 1930, and was survived by his widow, Tamar Richardson, and five daughters and four sons, including the appellant. In the probate of the deceased's estate letters of administration were duly issued on April 1, 1930, to his sons John and Lewis, and they promptly qualified as administrators, and filed an inventory and appraisal of the estate's assets. In November, 1934, a citation was issued upon the application of the appellant requiring the administrators to render and file a full and final account so that said estate would be administered and settled according to law. They answered that in October, 1930, the court had approved of their final account and ordered the distribution of the estate's assets to all of the heirs in accordance with a contract made by them, and that upon the distribution thereof accordingly each accepted his or her share excepting Mark Richardson, Jr., and that his refusal rendered it impossible to close the estate. Upon a hearing pursuant to that citation, it was established that on September 9, 1930, the administrators had filed their final account and that a hearing thereon was duly noticed and held on October 7, 1930. No objections were filed to that final account, which showed payments of $1,154.56 for inheritance taxes, and $5,345.12 in discharge of all debts of the estate and expenses of administration; and also showed that, in addition to 992.01 acres of farm land with improvements thereon, which the deceased owned when he died, the residue of his estate in charge of the administrators consisted of $47,416.85 in

cash, a real-estate mortgage loan for $1,458, including interest, United States bonds for $2,150, farm livestock and equipment appraised at $8,739, and certain securities issued by the Drake-Ballard Company and Drake-Jones Company of doubtful value. No entry was made in the minutes of the court in respect to the allowance, confirmation, or approval of that final account on October 7, 1930; and no order or final decree was signed or entered to that effect until the final judgment now under review was entered on July 15, 1936. However, at the conclusion of the hearing, which resulted in that final judgment, and as basis therefor, the court, in addition to finding the facts stated above, made findings to the following effect: That at the hearing on October 7, 1930, the court fixed the inheritance tax at $1,154.56, and "confirmed, approved and allowed" the final account; and that on March 4, 1930, the deceased's widow and all of his children had joined in a contract for the division of his entire estate which provided, in part,—

that the appellant and his five sisters were to have and receive "all of the cash, certificates of deposit and bonds of the estate equally between them," and that their mother and three other sons "hereby grant and convey the same unto them;"

that those three sons "shall have and take all the real estate, livestock and farming equipment" and the mother and other six children "do hereby grant and convey all their right, title and interest therein" unto those three sons, who are to provide the mother with a home and support;

that the doubtful Drake-Ballard Company and Drake-Jones Company securities be placed with a trustee to be appointed by the county court to liquidate and distribute avails thereof equally among the nine children, and that the estate debts, inheritance taxes, and expenses of administration shall be paid in equal shares by them;

and that the appellant and his sisters and their mother will execute conveyances of their interest in the land, livestock and equipment to the three other children contemporaneously with making and filing of final judgment and distribution.

The court further found and adjudged that contract to be valid, and that the "estate and property thereof are hereby assigned and distributed in conformity therewith;" that the share of each of the six children, who were to take the cash, certificates of deposit, and bonds equally between them, under that contract, was $8,917.86, and on October 9, 1930, distribution thereof was made accordingly by each of two of the sisters accepting cash for her share, and each of the other three accepting either United States bonds or the real-estate mortgage loan, together with some cash to make up the amount of her share; and that "said payments to and settlement with them are hereby confirmed and approved;" that on that date the administrators notified the appellant of that distribution, and then caused to be offered to him a check for $8,917.86, payable to him as his share of the estate assets under the contract, but that he then and at all times thereafter refused acceptance thereof without any lawful excuse; that that check was drawn against the funds of the estate which had been deposited by the administrators in a national bank, which was a lawful depository for such funds; and that the amount of appellant's share of $8,917.86 was and continued thereafter on deposit in that bank, subject to his order, and he is and was at all times entitled thereto and the dividends of fifty per cent and thirty per cent payable thereon in the liquidation of the bank's assets since the closing thereof in March, 1933, and that "the same are hereby assigned to him, . . . in full of his share of the said estate;" that the court appoints W. Raymond Jamieson trustee to take over, hold, and liquidate the doubtful securities of the Drake-Ballard Company and the Drake-Jones Company, and to distribute the proceeds between the nine children pursuant to the contract of March 4, 1930; that the real property (described in the judgment), farm personalty, and livestock "be and the same are hereby assigned and distributed equally to" the three other brothers, in fee simple, "charged only with

the right of Tamar Richardson, widow, to have her home and support at, upon and from" that property; and that the "administrators having heretofore complied with all the terms and conditions of said agreement, so far as possible for them, and the evidences of the said distributive share of the funds due to the son Mark Richardson, Jr., having been duly delivered into this court, and the Drake-Ballard Company and Drake-Jones Company securities having been deposited with the judge of the court for delivery hereunder pursuant to the terms of said agreement and this judgment, that said administrators and their bond and sureties be and are hereby released from any liability in said estate accruing subsequently to date hereof."

There is virtually no dispute in respect to any of the material facts which were thus found by the court, excepting on the issues, (1) whether the county court in October, 1930, did approve and allow the administrators' account; and (2) whether the appellant was notified that the check for his one-sixth share under the contract was available to him, and he refused to accept it or any money at all because he had changed his mind and wanted the contract changed so that he could get some of the land of the estate instead of money.

In respect to the first of those matters in dispute, the record discloses that the court erred in July, 1936, in holding that the court had in October, 1930, confirmed, approved, and allowed the final account. At most, the judge then merely mentally considered the account to be correct in the absence of the filing of any objection thereto. As the court said in the written decision pursuant to which judgment under review was entered, "there is no final order allowing nor are there any minutes by the judge indicating that it was heard." Under those circumstances, the mere mental conclusion on the part of the judge to allow or confirm the account, without announcing or otherwise duly making an order in open court accordingly, did not have any legal effect.

Sec. 253.12, Stats., expressly prescribes that "The judges of the county courts, in the exercise and discharge of probate powers and duties, shall never make an order affecting in any way the rights of any person except it be done in open court;" and as we held in *Will of Robinson*, 218 Wis. 596, 261 N. W. 725, there must be compliance with that method of procedure.

In relation to the second matter in dispute, the record fully warrants the court's findings and conclusions. There was ample evidence to sustain the court's statement in its written decision that the administrators and their attorneys did all that anyone could do in closing the matter as rapidly as possible, and that they would certainly have completed the distribution and settlement in October, 1930, if Mark, Jr., had not prevented it by refusing to accept his share or carry out his part of the contract of March 4, 1930; that a few months after that date he said he wanted land instead of money; that when he called on Mr. O'Brien, the attorney for the estate, shortly after October 7, 1930, and was urged by him to accept the check for his share, Mark, Jr., refused it and said he would never accept it or any money from the estate at all; that he knew very well in the fall of 1930 that distribution had been made to all the others interested and that his check was ready for him; that because of his bitter feeling toward some members of the family, he stubbornly refused acceptance of his share and no one was able to persuade him to change his mind; and that in these circumstances a legal tender of his money would have been useless and unnecessary.

Appellant contends that the jurisdiction of the county court to assign the intestate's estate was limited to the distribution thereof in accordance with the statutes on that subject and that, therefore, the court erred in adjudging the assignment or distribution thereof in accordance with the contract between the heirs. That contention cannot be sustained.

Sec. 253.03, Stats., provides (so far as is here material) that,—

"The jurisdiction of the county court shall extend to the probate of wills and granting letters testamentary and of administration on the estates of all persons deceased; . . . to *all matters relating to the settlement* of the estates of such deceased persons."

Furthermore, it is provided in sec. 318.06, Stats., that,—

"(1) After the payment of the debts, funeral charges and expenses of administration, . . . the county court shall, by a judgment *assign* the residue of the estate, if any, *to such persons as by law are entitled to the same.*"

"(2) Such judgment may be made on the application of the executor or administrator or *of any person interested in the estate.* The court shall name therein the persons and assign to each the portion *to which he is entitled.* The right to recover any such portion from the executor or administrator or from any other person is hereby given *to the person entitled thereto.*"

In view of those provisions and the fact that the contract of March 4, 1930, was a "matter relating to the settlement of the estate" of a deceased person whose estate the county court had jurisdiction of to administer, it was within the power conferred upon that court by sec. 253.03, Stats., to take into consideration and give effect to that contract. That was necessary in order to adjudge the assignment of the residue of the estate "to such persons as by law are entitled to the same" as is prescribed in sec. 318.06 (1), Stats.; and, as is provided in sub. (2) of that section, "such judgment may be made on the application . . . of any person interested in the estate," and the "right to recover any such portion . . . is hereby given to the person entitled thereto." Under those provisions the county court's jurisdiction is obviously broad enough to include the interests of all persons, whether as the heirs or their assignees, in an intestate's estate which is in the process of administration. So in *State ex rel. Peterson*

*v. Circuit Court,* 177 Wis. 548, 553–556, 188 N. W. 645, it was held that in intestate probate proceedings it was within the jurisdiction of the county court to pass upon and take into consideration the validity and effect of an alleged ante-nuptial contract under which the deceased's widow was limited to a fixed amount in lieu of her distributive share and dower as a widow. In arriving at that conclusion the court said:

"The county court has full primary jurisdiction to enforce the ante-nuptial contract or to give guidance or direction to the administrator with respect to his duties and obligations in relation thereto. . . .

"In *Wisdom v. Wisdom,* 155 Wis. 434, 145 N. W. 126, it was held that the county court has full jurisdiction in law as well as in equity in respect to all matters involved in the settlement of the estates of deceased persons. Such jurisdiction is conferred by sec. 2443, Stats. [sec. 253.03], and is also declared in *Brook v. Chappell,* 34 Wis. 405; *Catlin v. Wheeler,* 49 Wis. 507, 5 N. W. 935; *Tryon v. Farnsworth,* 30 Wis. 577; *Carpenter v. U. S. F. & G. Co.* 123 Wis. 209, 101 N. W. 404. . . .

"In accordance with the legislative scheme heretofore referred to and declared in numerous decisions above cited, all actions and proceedings coming within the jurisdiction of the county court and in which the county court can afford adequate relief should be there tried. The county court has before it in the action in question all of the parties and has full jurisdiction of the subject matter. The orderly procedure in the matter of administration of estates of deceased persons therefore requires that matters like those involved in the instant case should be adjudicated in that court and not in the circuit court, and a party interested therefore cannot be compelled to litigate in the circuit court in a matter where full relief can be granted in the county court."

See also Gary, Wisconsin Probate Law (4th ed.), p. 6, § 5, p. 7, § 5; *Crow v. Day,* 69 Wis. 637, 35 N. W. 45; *Liginger v. Field,* 78 Wis. 367, 370, 47 N. W. 613.

However, it must be noted in this connection, that, in this state, in probate proceedings under a will the county court's

jurisdiction to assign the assets is limited to the assignment thereof in accordance with the will, because to assign them in pursuance of an agreement between the legatees or heirs for a division of the estate contrary to the terms of the will would be giving effect to a contract which cannot be enforced in the probate proceedings because that would defeat the will of the testator. See *Estate of Sipchen,* 180 Wis. 504, 193 N. W. 385; *Will of Stanley, ante,* p. 345, 269 N. W. 550, and cases cited therein.

On the other hand, although the court had jurisdiction in this case to assign the assets in accordance with the contract, its jurisdiction as a court did not also extend to the appointment of a trustee. In that respect appellant's contention must be sustained. Under the terms of sec. 253.03, Stats., the county court is given jurisdiction in respect to trusts and trust powers only to "all cases of trusts and trust powers created by will admitted to probate in such court." That provision, construed in the light of the maxim, *expressio unius est exclusio alterius,* fails to confer jurisdiction upon the county court in respect to trusts or trust powers created otherwise than by a will. Consequently, as we held in *Newcomb v. Ingram,* 211 Wis. 88, 98, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171, that court is without jurisdiction to appoint a trustee for a trust created solely by the acts or contract of the widow and the children of a deceased. Therefore, the provision in the judgment appointing W. Raymond Jamieson as a trustee to take over and liquidate certain securities cannot be sustained, and the judgment must be modified in that respect. However, as the provision in the contract which creates that trust is not invalid, upon the proper appointment of a trustee thereunder those securities can be assigned by the county court to such trustee and thereupon the trust can be executed.

Appellant further contends that even if the court had jurisdiction to assign the residue of the assets of the estate pursuant to the contract and to approve of their distribution

by the administrators in accordance therewith, it was nevertheless in error in so far as the final judgment of July 15, 1936, purported to confirm and approve of the settlement and payments made thereunder by the administrators, and to adjudge that they had complied therewith as far as was possible, and that the $8,917.86 which were on deposit in the bank for honoring the check issued therefor, payable to the appellant, and all dividends payable or to be paid in liquidation of that deposit, are assigned to him in full of his share of the estate under the contract. The provisions to that effect in the judgment are challenged on the grounds that they are not in accord with the contract because it calls for and entitles appellant to an undivided interest in specific personal property, which was never tendered to him; and that the offered check for an amount in lieu of the value of that property was not a tender thereof, and was premature. Although the contract provision read that the appellant and his five sisters "shall have and receive all of the cash, certificates of deposit and bonds of the estate equally between them," it is obvious that it was not intended under that provision that the contract called for the delivery of an equal part of that specific property to each of those children. No such understanding could be drawn therefrom because it was physically impossible to divide into six equal shares the specific United States bonds, the small mortgage loan, and the certificates of deposit, as they stood March 4, 1930. Some of that property had to be liquidated in order to pay the expenses of administration, inheritance taxes, and debts of the deceased, which all told exceeded by several thousand dollars the cash on deposit. Therefore, it manifestly must have been the intention of the parties that, in respect to those securities, the equal division among the appellant and his five sisters was to be of the value thereof in money. That was not greater than the value stated on the face of the securities, and that was the amount which was paid in equal shares

by the checks and the distribution of the bonds and the mortgage note and mortgage to the appellant's sisters, and was placed at his disposal by the deposit which was left in the bank to honor the check which he refused to accept. That division and distribution was made as fairly and justly as possible, and there was no particular intrinsic or other value in the specific securities to justify or excuse appellant's arbitrary refusal in the premises. It is significant that he did not base his refusal on such grounds, or refuse because the distribution and the offer of the check were made prematurely. On the contrary, his refusal was originally solely because he changed his mind regarding the division made by the contract, and insisted on receiving land in disregard of its provisions. Appellant bases his subsequent contention that the distribution and offer of the check in October, 1930, were premature upon the facts that under the contract the final distribution was to be made "contemporaneously with the making and filing of the final judgment," and no such judgment was entered until July 15, 1936. It is true that in that respect there was not a strict compliance with the letter of the contract. However, the appellant sustained no pecuniary loss or disadvantage because of the time or the manner in which the distribution of the assets was made. In passing upon his contentions it must be noted that the county court, while not a court of equity in the sense that it has general jurisdiction of actions in equity, has the same power to recognize and apply equitable rules and principles in so far as they are applicable to matters relating to the settlement of estates of decedents, that courts of equity have to apply rules of law; and that as is stated above the "county court has full jurisdiction in law as well as in equity in respect to all matters involved in the settlement of the estates of deceased persons." *State ex rel. Peterson v. Circuit Court, supra.* Therefore, there is applicable, in a proceeding such as this, the cardinal maxim that "Equity regards that as done which

ought to be done." Pomeroy, Eq. Jur. (4th ed.) § 368 *et seq.* In this case, under the terms of the contract, all the property of the deceased was thereby divided among all of his heirs and, as was specified therein, the appellant and his sisters "shall have and receive all of the cash, certificates of deposit and bonds of the estate equally between them," and they shall also, but in conjunction with their three brothers, have the avails of the specified doubtful securities divided between them upon the liquidation thereof by the trustee who was to be appointed to execute the trust created by their contract in that regard. By other provisions therein the appellant and his sisters and their mother agreed that the three brothers "shall have and take all the real estate, livestock and farming equipment of the . . . deceased," and did thereby "grant and convey unto". them "all their right, title and interest therein," and also agreed that they would "cause to be executed" a "lawful instrument of conveyance" of that real estate and personal property to the three brothers "contemporaneously with the making and filing of the final judgment and final distribution of the estate pursuant to the covenants and terms hereof" in the county court proceedings; and that the county court should "also assign and distribute said property real and personal of said estate as herein covenanted, assigned and conveyed." Thus, on its face the contract purported to presently divide, and to convey to each of the parties thereto undivided interests in certain assets. But if the right of each to his or her share cannot be deemed to have become immediately and absolutely vested in each of them because of the likewise vested rights therein of the deceased's creditors, etc. (*Caldwell & Gates Co. v. Mennes,* 190 Wis. 551, 209 N. W. 588), and the necessity for an adjudication as to who constitute the heirs of the deceased, and also assigning the residue of the personalty in the due course of proper probate administration proceedings (*Latsch v. Bethke,* 222 Wis. 485, 489, 269 N. W. 243, 245), then

the contract must, nevertheless, under the maxim that "equity regards that as done which ought to be done," be held to have at least conveyed presently the equitable interest in the personalty and the real estate according to its terms. Under that rule, each of the parties to the contract became the equitable owner of the property which was thereby assigned and conveyed to him or to her. Thus, the appellant and his sisters became the equitable owners of the bonds, cash, and certificates of deposit, which included the money in the bank. The check for $8,917.86, which the administrators offered the appellant in October, 1930, immediately after the hearing in court upon their final account without any objection thereto, and which was the full equivalent of his one-sixth share of the personalty thus owned by him and his sisters, carried out and evidenced the transfer to him of his share of the funds in the bank so far as was necessary to empower and enable him to take his share of those funds into his possession. Therefore, the appellant must be deemed to have acquired the title and to have become the owner of the fund which was represented by the check, and which was thus placed at his disposal and in his control. The final judgment of July 15, 1936, fully carried out the intent of the contract of March 4, 1930, and did whatever was still necessary by proper administration proceedings (*Latsch v. Bethke, supra*) to effectuate that contract and definitely pass the title which vested in each of the parties thereto and in accordance therewith to the personal property involved therein. Although that judgment may not in itself transfer the legal title to the land (*Gillett v. Treganza,* 13 Wis. \*472; *Jones v. Roberts,* 84 Wis. 465, 54 N. W. 917; *Latsch v. Bethke, supra*), it did all that such a judgment could do, and resort can be had to a court of equity to quiet the title thereto in the three brothers. At all events, the appellant is not aggrieved in that respect and cannot complain if his brothers' title has not been effectively perfected. In so far as he is concerned, his rights

and interests in view of the contract are solely in the consideration due to him thereunder for his former interest as an heir in the land; and in relation to that consideration the county court rightly adjudged that he is "entitled to" the deposit of $8,917.86 made by the administrators, subject to his order, and the claim therefor, including the dividends paid and to be paid thereon, and that "the same are hereby assigned to him . . . in full of his share" of the estate.

It is true, as appellant contends, that the provision in the judgment which reads, "That all the aforesaid real estate . . . be and the same are hereby assigned and distributed equally to John, Charles and Lewis Richardson in fee simple, charged only with the right of Tamar Richardson, widow, to have her home and support," etc.,—is erroneous in so far as it provides, in effect, that the title of the three brothers is subject only to the right of Tamar Richardson. That statement fails to duly reserve also the inchoate dower rights of the wife of the appellant. Her right in that respect would have to be recognized, and an allowance made therefor in partition proceedings, sec. 276.36, Stats.; and the respondents' counsel concede that the judgment cannot divest her of her dower right. Consequently, that provision in the judgment should be modified so as to also reserve that dower right.

*By the Court.*—Judgment modified as directed in the opinion; and affirmed as modified, without costs. The appellant shall pay the clerk's fees.