COURT OF APPEALS
DECISION
DATED AND FILED

March 29, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1033**

Cir. Ct. Nos. **2017PR38**
**2018CV440**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

CHRISTINE T. DELFELD,

APPELLANT,

V.

STEVEN D. DELFELD, PAULINE R. DELFELD, GREGORY J. DELFELD AND THE ESTATE OF THERESA M. DELFELD, BY PERSONAL REPRESENTATIVE BARBARA FITCH,

RESPONDENTS.

----------------------------------------------------------------

CHRISTINE T. DELFELD,

PLAINTIFF-APPELLANT,

V.

STEVEN D. DELFELD AND PAULINE R. DELFELD,

DEFENDANTS-RESPONDENTS.

APPEAL from judgments of the circuit court for Fond du Lac County: ROBERT J. WIRTZ, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Christine T. Delfeld, pro se, appeals from judgments closing the probate of her mother's estate and dismissing her action to invalidate a real estate conveyance.  Christine argues the trial court erred by failing to invalidate her parents' conveyance of real property to her brother, Steven D. Delfeld.  She also argues the court erred in its stock and partnership valuation determinations and by failing to award her certain tangible personal property.  We reject her arguments and affirm.

## BACKGROUND

¶2     John and Theresa Delfeld had four children:  Christine, Steven, Pauline R. Delfeld, and Gregory J. Delfeld.  John died on December 13, 2016.  All of his property passed to Theresa without probate.  Theresa died on August 10, 2017.  Steven petitioned for formal administration of his mother's estate.  After a dispute, the siblings stipulated to having former Fond du Lac County Register in Probate Barbara Fitch serve as the estate's personal representative.

¶3     Probate was contentious between Christine and her siblings.  Disputes arose concerning the estate's inventory and proposed distributions.  Christine also filed a separate civil action against Steven and Pauline, disputing a conveyance of commercial real estate that John and Theresa made to Steven before their deaths.

2

The trial court consolidated the civil and probate actions and held a four-day trial. We recite only those facts from trial necessary to this appeal.

## I.    Commercial property located at 75 S. Main Street

¶4    John and Theresa owned a commercial building located at 75 S. Main Street in the city and county of Fond du Lac, Wisconsin.  In December 2015, John and Theresa met with Attorney Julie Maslowski to discuss estate planning.  Steven and Pauline also attended the meeting.  John and Theresa wanted to gift the 75 S. Main building to Steven, and, at John and Theresa's instruction, Maslowski prepared a quit claim deed.  The deed was executed on March 10, 2016 at Maslowski's office, who then notarized and had it recorded.

¶5    After her parents' deaths, Christine wanted the conveyance invalidated and the building deemed part of her mother's estate for distribution.  She testified Theresa's and John's signatures were not their own.  In support, she offered a cover letter from Maslowski, which seemed to invite the elder Delfelds to simply sign and return the deed without notarization.  However, Pauline and Steven both testified Steven brought Theresa, who was then residing at a nursing home, to Maslowski's office to sign the deed.  John also signed the deed at Maslowski's office.  Maslowski testified that while she had no specific recollection of the signing of the deed, she would have never notarized it without seeing the Delfelds sign it.

¶6    Christine's handwriting expert, Jane Lewis, testified that Theresa's signature was not hers.  However, Steven and Pauline both testified Steven assisted Theresa in signing the deed.  Lewis testified the signature did not show evidence of being guided or assisted.  Lewis opined that John's signature may be authentic; however, the evidence was far from conclusive.

¶7    Christine also introduced Theresa's records from the nursing home in an effort to show that Theresa could not have traveled to Maslowski's office on the afternoon of March 10, 2016, as Pauline, Steven and Maslowski testified, because the nursing home records indicated that Theresa's vital signs had been recorded during this time and the records contained no notation Theresa had left the facility. After reviewing the records, Pauline identified several instances where Theresa's verifiable off-site medical appointments were not recorded and where vital sign readings were not recorded at the time when they were actually taken.

¶8    Christine then testified John and Theresa lacked capacity to execute the deed. Theresa's records from the nursing home indicated her mental capacity and stamina were low. However, the other three Delfeld children testified their parents were competent at the time the deed was signed. Maslowski reached the same conclusion in the course of her initial two-hour meeting with them, explaining that she ensures her elderly clients fully understand the nature of their assets and what they want to do with them. Her notes indicated this property was part of Steven's business and John and Theresa wanted to transfer the property to him so that he could continue business operations.

¶9    The trial court concluded it did not "find that the deed that was signed by the Delfelds, John and Theresa, was fraudulently executed." It reasoned Christine's claim was based on the fact that three people were lying: Steven, Pauline, and Maslowski. The court noted that Pauline and Maslowski had nothing to gain by lying. Although there was competing evidence in terms of the nursing home records, competency, and the handwriting expert, the court explicitly found this evidence was not as convincing to the court as Pauline's and Maslowski's first-hand accounts that Theresa and John had sufficient mental capacity, were present to sign the deed, and did sign the deed (Theresa with the assistance from Steven).

4

## II.    Focus, Inc. shares

¶10    Focus, Inc. owns and operates the Focus hobby shop.  The Focus hobby shop, in turn, is housed in 75 S. Main Street (the commercial building that John and Theresa conveyed to Steven).  John owned all the Focus, Inc. shares, and the shares passed to Theresa upon John's death.

¶11    Steven testified that for the past thirty years, he played a critical role in running Focus.  As John's health declined, Steven assumed most of the store's operational responsibilities.  Steven is currently Focus's sole employee.  Fitch assigned the Focus stock to Steven as part of his one-fourth interest in the estate. The factual question before the court was the value of the Focus stock.

¶12    Fitch testified Focus, Inc. itself had no value.  She reviewed the company's schedule K-1s for the last three years and stated that the business operated at a loss.  Fitch hired Noreen Dogs to value the store's inventory.  Dogs, who did not testify at trial, determined the cost value of the inventory was $26,720. Fitch therefore determined the value of the Focus stock was $26,720.

¶13    Steven presented the testimony of Jacob Toman, who was experienced in retail-clothing-store liquidations.  Toman discussed two options: a public liquidation sale or a bulk sale to a single commercial buyer.  He opined that given the inventory's uniqueness, obsolescence, and age (the inventory's average age was over three years' old), combined with Dogs' $26,720 inventory cost valuation, a public liquidation sale would be impractical because advertising and staffing costs would consume profits.  A better option would be to sell the inventory in bulk to a commercial buyer.  Under this scenario, one could expect to receive ten to fifteen percent of the inventory's cost value.  Toman opined the value of the Focus inventory was no more than $5,000.

¶14 Steven testified Focus had made no profit since 2012. In 2017, the year Theresa died, the store lost $4,949. Steven's salary was $12,000 per year. However, Steven had not actually received and cashed a Focus paycheck since 2013. Instead, Focus issued Steven promissory notes for unpaid salary. Moreover, Focus was unable to pay any rent for its location at 75 S. Main Street.

¶15 The trial court determined the value of the Focus shares was zero. The court found Toman's value of the inventory more convincing than Dogs'. The court reasoned that, "given the amounts of unpaid rent, other expenses, and wages that have been deferred for such a significant period of time, the idea that there's value to the corporation is, I think, fanciful. And, so, the Court places the value at zero."

## III.    79 South Main Street Partnership.

¶16 Theresa died an equal partner with Christine in the 79 South Main Street Partnership. Fitch assigned Theresa's interest in the partnership to Christine as part of Christine's one-fourth interest in the estate. The factual question before the court was the value of Theresa's interest in the partnership.

¶17 The partnership's only asset was a commercial building located at 79 S. Main Street, which was appraised at $88,000. Fitch proposed to value Theresa's share of the partnership at $44,000. However, Steven, Gregory, and Pauline filed an objection, contending Theresa's interest in the partnership was worth more than $44,000 because Theresa had significantly over-contributed to the partnership's capital expenses.

¶18 During trial, Christine objected to some of the exhibits created by Pauline that detailed the partnership's expenses and the contributions made on the

basis that the documents were not produced in discovery. The court agreed and excluded those exhibits.

¶19     Pauline asserted, even without these exhibits, Theresa's interest in the partnership was $65,889.72. Pauline's counsel explained "under partnership law under Chapter 178, that creates an adjustment there, where the first dollars that come out of 79 South Main Street LLP belong to Theresa because of her overpaying her share." In support, Pauline relied on a different exhibit that was admitted into evidence and showed Christine contributed $61,381.27 to operating expenses, but the partnership had amassed $181,739.92 in expenses. Pauline subsequently adjusted her proposed partnership interest value to $65,889.72 (in favor of Christine) to "giv[e] Christine credit for every penny she says she ever put in, even without substantiation on it."

¶20     The trial court rejected Christine's assertion that the value of Theresa's interest was $44,000 and instead valued the partnership interest at $65,889.72.[1] It reasoned "even excluding the documents that came in late, that the Court didn't allow, that it's clear that Theresa Delfeld provided more capital input into the partnership than Christine and the difference is the number that I indicated."

## IV.    Tangible Personal Property

¶21     In regard to the estate's personal property, Christine submitted a list of items she wanted from the estate. At the close of trial, in terms of the personal

---

[1] The transcript of the court's oral ruling states that the court valued the partnership interest at $67,889.72; however, the final judgment states the value is $65,889.72, which mirrors Pauline's trial argument.

property, the court observed that based on the testimony, the vast majority of the personal property were items of sentimental value with very little worth.

¶22    The trial court granted Christine's request for a Japanese robe, a grandfather clock, a desk, a box of antique records, a set of mixing bowls, a dining room set, a Belgian lace tablecloth, one of the four antique record players, one of the two hand-built clocks, one-fourth of John's 78 rpm antique phonograph records, and a picture of Christine as a young girl.  In terms of her request for the dishwasher, the court denied that request if the dishwasher was installed in the house but granted it if the dishwasher was in the garage.  Assuming the following items could be located, the court also awarded Christine books and artwork she requested, her childhood toys, assorted clothing from high school, canning jars, a Monk series of DVDs, Doris Day CDs, an electronic writing table, three sweaters Christine gave to John, her 33 rpm singles, John's Leica camera, and an unfinished banjo.  The court gave Christine three hours in the residence to find these missing items.

¶23    The court denied Christine's request for a dresser, some cane back chairs, John's lathe, and a photography collection.  The court also denied Christine's request for jewelry, stating it was convinced that Theresa gifted the jewelry to Pauline multiple years ago.  The court denied Christine's request for John's coin collection, Theresa's wedding dress, and a black velour jacket on the basis these items no longer existed.  Finally, the court denied Christine's request for one-fourth of Theresa's ashes, noting there was testimony that Theresa wanted her ashes scattered in the garden.  The court ordered that the ashes be scattered in the garden and that Steven give everyone sufficient notice beforehand.  Christine appeals.

**DISCUSSION**

¶24    Probate proceedings occur in equity, *see Richardson v. Richardson*, 223 Wis. 447, 459, 271 N.W. 56 (1937), and we review decisions in equity for an erroneous exercise of discretion, *see Richards v. Land Star Group, Inc.*, 224 Wis. 2d 829, 847, 593 N.W.2d 103 (Ct. App. 1999). We will not reverse if the trial court "applied the correct law to the relevant facts and reasoned its way to a reasonable conclusion." *Estate of Wheeler v. Franco*, 2002 WI App 190, ¶6, 256 Wis. 2d 757, 649 N.W.2d 711.

¶25    On appeal, Christine argues the trial court erred by failing to invalidate her parents' conveyance of 75 S. Main to Steven. She also argues the court erred in its valuations of the Focus stock and Theresa's interest in the 79 South Main Street Partnership. Finally, Christine disputes the court's distribution of the estate's personal property. We address each argument in turn.

## I.    Conveyance of 75 S. Main Street to Steven

¶26    Christine argues her parents' conveyance of 75 S. Main Street to Steven must be set aside. She first renews her contention that her mother's signature was forged and she emphasizes the evidence she presented at trial to prove that fact. However, the trial court considered all of Christine's evidence and found the competing witnesses' testimony and other evidence to be more persuasive and more credible. *See State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990) ("It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). We see no reason to overturn the trial court's factual determinations in this case. *See id.* at 507 ("[A]ppellate court must accept

and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law.").

¶27 Christine then argues the conveyance must be set aside based on the trial court's determination that Steven assisted Theresa with her signature. She argues assisted signatures are not permitted to convey real estate. In support, she cites WIS. STAT. § 706.02(1)(d) (2021-22),[2] which provides, in relevant part, a transaction shall not be valid unless it "[i]s signed by or on behalf of each of the grantors[.]" Christine asserts that because Steven assisted Theresa with her signature, Theresa never "signed" the deed.

¶28 However, "signed" as defined by WIS. STAT. § 706.01(10) "includes any handwritten signature or symbol on a conveyance intended by the person affixing or adopting the signature or symbol to constitute an execution of the conveyance." Here, the trial court concluded that in the presence of Steven, Pauline, John, and Maslowski, Theresa had sufficient mental capacity and intended to sign the deed. *See Nelson v. Albrechtson*, 93 Wis. 2d 552, 560-61, 287 N.W.2d 811 (1980) ("The obvious purpose of requiring the signature of the grantor to appear on the conveyance is to evidence his intent to become bound by the agreement."). Thus, we reject Christine's arguments with respect to the conveyance of the property to Steven.

## II. Focus stock value

¶29 Christine next disputes the trial court's determination that the value of the Focus stock was zero. She argues Steven never introduced written proof at trial

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

10

showing what Focus owes him in rent or payroll. In support of her written proof requirement, she cites WIS. STAT. § 802.01(2)(b).

¶30 WISCONSIN STAT. ch. 802 is titled "Civil Procedure – Pleadings, Motions and Pretrial Practice." Section 802.01, in turn is titled "Pleadings allowed; form of motions." Subsection (2) relates to Motions, and paragraph (b), relied on by Christine, provides that "[c]opies of all records and papers upon which a motion is founded … shall be served with the notice of motion and shall be plainly referred to therein."

¶31 Christine overlooks the trial court's value determination was not made pursuant a motion but rather was based on the evidence presented to the court following a four-day trial. Steven testified Focus owes him unpaid salary and unpaid rent. Steven's testimony combined with Toman's testimony that the store's inventory was worth no more than $5,000 and Fitch's testimony that the business had operated at a loss for the past three years is why the court determined the value of the stock was zero. We see no reason to overturn the trial court's factual determinations on this issue. *See Poellinger*, 153 Wis. 2d at 506-07.

## III. Value of Theresa's interest in the 79 South Main Street Partnership

¶32 Christine raises numerous arguments in support of her position that the trial court erred by determining Theresa's interest in the partnership was $65,889.72. She first renews her argument that Theresa's interest in the partnership was fifty percent of the building's value. She explains that any money she owed to the partnership did not affect the partnership's value. Rather, Christine believes that Fitch, on behalf of her mother's estate, should have made a claim against Christine to recoup any money Christine owed the partnership and because Fitch did not, her siblings lack standing to make such assertions.

¶33 However, in the trial court and again on appeal, Christine's siblings relied on various partnership law provisions found in WIS. STAT. ch. 178 to argue that, in valuing the interest, the court needed to first take into account Theresa's excess capital contributions. *See, e.g.*, WIS. STAT. § 178.0806 (disposition of assets in winding up; when contributions required). In rejecting Christine's argument about the need to file a separate claim, the trial court reasoned:

> I am persuaded that what passes to Christine is the value of the partnership at that time. This isn't a claim, as has been argued, that somehow there needed to be a claim made against Christine for certain amounts of capital that weren't asked for or could have been asked for. I find that it's a -- simply the value of … that partnership[.]

¶34 In her brief-in-chief and reply, Christine does not mention WIS. STAT. ch. 178. She does not refute her siblings' contention that "The trial court's action was mandated by WIS. STAT. § 178.0806." *See **United Coop. v. Frontier FS Coop.**,* 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession). Christine also fails to develop a legal argument as to why the trial court's determination that a separate claim did not need to be filed was in error. *See **State v. Pettit**,* 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (explaining that we may decline to review issues that are inadequately briefed or have undeveloped legal arguments). We decline to consider this argument further.

¶35 Christine next argues that by determining Theresa's interest in the partnership was $65,889.72, the trial court sua sponte decreased the value of Christine's partnership interest and this sua sponte decision was made without twenty days' notice and an opportunity to be heard, as required in WIS. STAT. § 802.08(2). We disagree.

¶36    First, Christine appears to conflate the value of the partnership interest with the ownership structure itself.  Christine remained a fifty-percent owner and the court's valuation determination did not change the ownership structure.  Rather, the court's valuation took into account the excess capital contributions made by Theresa before dividing the partnership's assets between the two partners.  As argued by her siblings, this was required pursuant to WIS. STAT. § 178.0806.

¶37    Second, the court did not sua sponte issue its decision without twenty days' notice and an opportunity to be heard.  Her siblings' dispute to the partnership interest was filed July 11, 2019.  Trial started on November 2, 2020.  Christine had more than fifteen months to prepare for the valuation dispute and, during the four-day trial, she had ample opportunity to be heard.

¶38    Third, WIS. STAT. § 802.08(2) is not applicable.  Section 802.08(2) details when a motion for summary judgment may be brought.  The court did not issue summary judgment on the valuation of the partnership interest.  Rather, the court held a four-day trial and heard numerous witnesses testify regarding the value of Theresa's partnership interest.  The trial court adopted Pauline's testimony and valued Theresa's partnership interest at $65,889.72.

¶39    Christine next argues there is "no evidence in the court record proving Christine owed the partnership money."  She emphasizes the exhibits the court excluded from evidence at trial and argues that without these exhibits the court's determination is speculative.  We disagree.

¶40    The exhibit supporting the siblings' claim regarding the value of partnership interest, which was relied on by the trial court and properly admitted into evidence, showed that Theresa contributed approximately $120,000 more in expenses than Christine.  That exhibit valued Theresa's partnership interest at a

greater amount than what was ultimately awarded by the court. However, as explained by Pauline's counsel, the siblings adjusted the number downward in favor of Christine in order to "giv[e] Christine credit for every penny she says she ever put in, even without substantiation on it." We see no reason to overturn the court's factual and credibility determinations. *See Poellinger*, 153 Wis. 2d at 506-07 (reviewing court accepts the inference drawn by the trier of fact).

## IV. Tangible personal property

¶41    Finally, Christine argues the trial court failed its obligation under WIS. STAT. § 857.09 to ensure that Christine received one-fourth of the estate's tangible personal property. Section 857.09 is titled "Procedure which may be followed when personal representative fails to perform," and provides in part:

> If a personal representative fails to perform an act or file a document within the time required by statute or order of the court the court upon its own motion or upon the petition of any person interested may order the personal representative for the estate and his or her attorney to show cause why the act has not been performed[.]

¶42    Here, we conclude the trial court did not have an obligation under WIS. STAT. § 857.09 to bring its own motion against Fitch on behalf of Christine for Christine's perceived slight in the distribution of tangible personal property. Christine, who was represented by counsel in the trial court, does not explain why, if she believed Fitch failed in a duty relative to the division of tangible personal property, she herself did not bring a motion to show cause. Christine also offers no explanation as to why the trial court had a duty to act on her behalf. She also does not explain why the trial court's reliance on the list she provided was in error or was insufficient. We will not consider her argument further. *See Pettit*, 171 Wis. 2d at 646.

14

¶43 We also decline to consider the list of tangible personal property items Christine provided to this court and wants awarded to her. The trial court, not the appellate court, makes factual determinations regarding the division of personal property. *See* WIS. STAT. § 805.17(2).

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.