**J–I–J CONSTRUCTION COMPANY, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 87–1097.**

United States Court of Appeals, Federal Circuit.

Sept. 11, 1987.

John Lukjanowicz, Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Seattle, Wash., argued for appellant. With him on the brief was Sam E. Baker, Jr.

Frank B. Flink, Jr., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director. Also on the brief was Sabrina Simon, U.S. Army Corps of Engineers, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, RICH and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

The problem before us is whether the appellant-contractor, J–I–J Construction Company, Inc. (J–I–J or the contractor), has timely filed its appeal to this court from the decision of the Corps of Engineers Board of Contract Appeals (EngBCA or Board) dismissing as untimely J–I–J's claim to that tribunal for attorney fees and expenses under the Equal Access to Justice Act (EAJA). We hold that the appeal to the court must be dismissed, due to late filing, as beyond our jurisdiction.

I.

The circumstances of J–I–J's contract dispute with the Government are now important only for their relevance to the timeliness of the current appeal. On September 13, 1984, the EngBCA held under the Contract Disputes Act that the contractor was entitled to an equitable adjustment pursuant to the "Changes" clause of the contract because of defective specifications related to the use of a quarry designated by the Government. The amount of that adjustment was to be negotiated by the parties; if they could not agree, the Board would decide the amount. 84–3 BCA ¶ 17,619. The parties could not agree, and a new EngBCA hearing was begun on that subject, but before it concluded the parties stipulated the amount. The Board sustained the second (quantum) appeal "on stipulation" in the amount of $7,400,000, together with interest of $4,650,000 from April 12, 1985 to payment.

An ancillary dispute then arose. The Government insisted on deducting $75,000 from the $7,400,000 judgment on account of a sum which had previously been paid to the contractor in connection with another change. J–I–J objected to that $75,000 deduction, and finally the Board certified to the General Accounting Office (GAO) for payment of its judgment of $7,400,000 and $4,650,000 interest, but also alerted the GAO to the parties' conflicting positions on the $75,000 deduction. Thereafter the parties submitted to the Board for resolution the issue of the $75,000, and the Board asserted its continued jurisdiction over that particular question. The Board then decided that the $75,000 was not a partial payment of the $7,400,000 award.

Shortly after receiving the Board's order holding that it had jurisdiction over the $75,000 issue, the contractor, asserting it was the "prevailing party," forwarded to the Board its fee application under the EAJA. The EngBCA dismissed that application as untimely. The Board's holding (on July 7, 1986) was that its order sustaining the appeal on the parties' stipulation as to quantum (issued April 16, 1985) was the Board's final decision from which J–I–J had

only 30 days to file a fee application. The later controversy over the $75,000 deduction was held not to toll the finality of the earlier final decision. Because the fee application did not come until October 1985, it was held untimely. 86–3 BCA ¶ 19,126 (July 7, 1986). On November 6, 1986 J–I–J filed here its petition for review of the Board's fee ruling.

## II.

The first and dispositive question is whether J–I–J's appeal to this court was timely. 5 U.S.C. § 504(c)(2) provides that

[i]f a party other than the United States is dissatisfied with a determination of fees and other expenses made under subsection (a) [which includes administrative agencies conducting "an adversary adjudication"[1]] that party may, within 30 days after the determination is made, appeal the determination to the court of the United States having jurisdiction to review the merits of the underlying decision of the agency adversary adjudication.

As pointed out in Part I, *supra,* the Board's final decision denying fees (because of untimeliness) was issued on July 7, 1986; the contractor's appeal to this court came on November 6, 1986—some 122 days later, considerably beyond the allowable 30 days.[2]

In response, J–I–J asserts that the 30-day appeal provision of 5 U.S.C. § 504(c)(2), *supra,* applies only where the agency board has decided the merits of the fee application, not when the board has simply dismissed that application as untimely (without determining its merits). Emphasis is put on the words (in § 504(c)(2)) "determination of fees and other expenses" which are said to cover only an award (or denial of an award) on the merits. By a strained reading, the legislative history of

the amended section is also said to show that Congress was then concerned solely with fee determinations on the merits.[3] Appellant adds that, if there is any time limit for appeal of a Board refusal to grant fees because of untimeliness of the application, it would be the 120-day period (after receipt of a copy of the Board's decision) permitted by the Contract Disputes Act (41 U.S.C. § 607(g)(1)(A)) for appeals to this court of decisions by contract boards on the contract disputes themselves.

We are not persuaded. In 5 U.S.C. § 504(c)(2)—a part of the Equal Access to Justice Act—Congress clearly seems to have set a 30-day time limit for court appeals from all final fee decisions by agencies conducting adversary adjudication— whether that decision be a ruling that a certain amount be awarded, or that no amount be awarded because none was warranted on the merits, or because the requesting party did not prevail, or because the application was inadequate, or because the application was too late under the EAJA. The broad statutory language—"a determination of fees and other expenses" —is very wide, easily blanketing the full field of agency fee decisions. Nothing in the legislative history truly suggests that Congress had in mind any lesser coverage for that appeal period provided in the EAJA. Unless there are specific exceptions, it is customary to establish one appeal limit for any decision of a lower tribunal on a particular matter—whatever its basis—which was unsatisfactory to the appealing party. We see here no basis in text or history for refusing to follow that general understanding. Certainly, the wholly separate appeal provision of the Contract Disputes Act (41 U.S.C. § 607(g)(1)(A)) could not have been intended to apply uniquely in a fee case simply because the Board found the fee application was filed

---

1. 5 U.S.C. § 504(b)(1)(C), as amended in 1985, included under "adversary adjudication" appeals to a board of contract appeals under the Contract Disputes Act of 1978.

2. This court hears appeals from decisions of the various boards of contract appeals under the

Contract Disputes Act. 28 U.S.C. § 1295(a)(10) and (b).

3. J–I–J cites H.R.Rep. No. 120, 99th Cong., 1st Sess. 16, reprinted in 1985 U.S.Code Cong. & Admin.News 132, 145, and 131 Cong.Rec. H4762 (daily ed. June 24, 1985).

too late. And it would be most curious for Congress to leave that one circumstance without any appeal limit at all. In a word, the appeal period in 5 U.S.C. § 504(c)(2) applies to all fee rulings by contract appeals boards.

It follows that the appeal in this case was filed much too late, this court there-fore has no jurisdiction of the appeal, and the appeal must be dismissed.[4]

DISMISSED.

---

**4.** Because we have no jurisdiction over this appeal, we cannot consider or discuss the correctness of the Board's decision that the fee application was itself untimely.