IN RE the ESTATE OF June G. WHEELER:

The ESTATE OF June G. WHEELER, Appellant,

v.

Patricia FRANCO and Diana Scott, Objectors-
Respondents.

Court of Appeals

*No. 01–3344. Submitted on briefs April 26, 2002.—Decided
June 19, 2002.*

2002 WI App 190

(Also reported in 649 N.W.2d 711.)

On behalf of the appellant, the cause was submitted on the briefs of *John E. Hotvedt* of *Lloyd, Phenicie, Lynch & Kelly, S.C.* of Burlington.

On behalf of the objectors-respondents, the cause was submitted on the brief of *Geoffrey Dowse* of *Madrigrano, Zievers, Aiello, Marry & Dowse, S.C.* of Kenosha.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. The estate of June G. Wheeler appeals from a probate court order awarding attorney fees under WIS. STAT. § 879.37 (1999–2000)[1] to Patricia Franco and Diana Scott, fees which they incurred in objecting to a claim filed against the estate. The estate

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

argues that under the "equitable extraordinary circumstances" doctrine, a court may allow attorney fees only when the personal representative fails to faithfully contest the claim and the efforts of the objectors enhance the value of the estate. *See First Wis. Trust Co. v. Bischoff*, 22 Wis. 2d 209, 216–17, 125 N.W.2d 350 (1963). According to the estate, Franco and Scott are not entitled to attorney fees because the personal representative adequately defended the estate and Franco and Scott's efforts provided no benefit. We observe, however, that the line of cases establishing the "equitable extraordinary circumstances" doctrine predate § 879.37, which allows the court to award attorney fees to "the prevailing party in all appealable contested matters." Therefore, the older cases are not applicable. We further determine as a matter of law that Franco and Scott were prevailing parties under the statute. Finally, the probate court did not err in exercising its discretion to award attorney fees to Franco and Scott as the prevailing parties.

¶ 2. Sam and Georgette Sauceda filed a claim against the estate in the amount of $20,000 for goods and services rendered to the decedent. The personal representative of the estate filed an objection to the claim and a demand for a complaint. The personal representative also hired counsel to defend the estate against the claim. Franco and Scott also filed an objection to the Saucedas' claim and hired their own counsel to represent them in the matter.[2] Thereafter, counsel for the estate had an opportunity to settle the claim for

---

[2] Georgette Sauceda, Patricia Franco and Diana Scott are daughters of June G. Wheeler and beneficiaries of her estate. The personal representative, Herbert E. Mueller, is the son of June and a beneficiary of the estate.

not more than $13,000. Franco and Scott, as objectors under Wis. Stat. § 859.31, refused to consent to the settlement.

¶ 3. The matter went to trial and in a written decision dated October 2, 2001, the trial court rejected the Saucedas' claim that they were entitled to $20,000 based on theories of contract or quantum meruit. Instead, the court awarded them $9,843.13 on a theory of unjust enrichment.

¶ 4. Franco and Scott then filed a petition for reimbursement from the estate as prevailing parties pursuant to Wis. Stat. § 879.37. The estate objected, arguing that the personal representative had adequately defended the estate and the involvement of Franco and Scott had simply drained the assets of the estate. The trial court agreed that the personal representative had "fairly and faithfully discharg[ed] his duties" but nonetheless awarded attorney fees to Franco and Scott because their representation "len[t] assistance to the Court" and "valuable services to the estate and the protection of their own interests were performed."

¶ 5. On appeal, the estate contends that the trial court erred when it awarded attorney fees to Franco and Scott as an expense to the estate. First, it argues that the statute neither contemplates nor allows costs paid to multiple parties. In this instance, the personal representative is the prevailing party because he faithfully fulfilled his obligation to defend the estate against an unjust or illegal claim. Franco and Scott, as second objectors, are not therefore "the" prevailing party under the statute. Second, relying on the judicially-created "equitable extraordinary circumstances" doctrine, the estate asserts that objectors are entitled to attorney fees only when the personal representative fails to

fulfill its duty to defend the estate and when the efforts of the objectors enhance the value of the estate.

¶ 6. We begin the discussion by examining the appropriate standard of review. A court's decision whether to allow attorney fees under WIS. STAT. § 879.37 to a prevailing party has two components. First, the court must decide whether the party seeking reimbursement of attorney fees is a prevailing party. This decision involves the application of facts to a particular legal standard, which is a conclusion of law that we review independently. *Nottelson v. DILHR*, 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980) (whether facts fulfill a particular legal standard is a question of law). If the court concludes that the party is a prevailing party, then the court may, but need not, award attorney fees. This decision calls for an exercise of discretion. *Gittel v. Abram*, 2002 WI App 113, ¶ 48, No. 01–1132. We affirm a trial court's discretionary decision if the court applied the correct law to the relevant facts and reasoned its way to a reasonable conclusion. *Id.*

¶ 7. Our first task, then, is to determine whether Franco and Scott are prevailing parties under WIS. STAT. § 879.37.[3] Statutory construction is a question of law. *Cmty. Credit Plan, Inc. v. Johnson*, 221 Wis. 2d 766,

---

[3] WISCONSIN STAT. § 879.37 provides that:

Reasonable attorney fees may be awarded out of the estate to the prevailing party in all appealable contested matters, to an unsuccessful proponent of a will if the unsuccessful proponent is named as an executor therein and propounded the document in good faith, and to the unsuccessful contestant of a will if the unsuccessful contestant is named as an executor in another document propounded by the unsuccessful contestant in good faith as the last will of the decedent.

763

772, 586 N.W.2d 77 (Ct. App. 1998), *aff'd,* 228 Wis. 2d 30, 596 N.W.2d 799 (1999). Our interpretation of § 879.37 is guided by case law interpreting the identical phrase under other fee-shifting statutes. In *Footville State Bank v. Harvell,* 146 Wis. 2d 524, 539–40, 432 N.W.2d 122 (Ct. App. 1988), we applied a workable definition of "prevailing party" in a Wisconsin Consumer Act case: "a party has prevailed if he or she succeeds on any significant issue in litigation which achieves some of the benefit sought by bringing suit." We employed identical language to define "prevailing party" under the statute for judicial review of an agency decision in *Kitsemble v. DHSS,* 143 Wis. 2d 863, 867, 422 N.W.2d 896 (Ct. App. 1988) (interpreting Wis. Stat. § 814.245(3)).

¶ 8. Applying this definition to Wis. Stat. § 879.37, an objector is a prevailing party if he or she achieves some significant benefit in litigation involving a claim against the estate. *See Cmty. Credit Plan,* 221 Wis. 2d at 774 (applying *Harvell* definition of prevailing party in a Wisconsin Consumer Act case). In this case, Franco and Scott objected to $20,000 in claims that, according to the trial court, were "highly suspect under the best of circumstances." They objected to settlement in the range of $13,000 and succeeded at trial in winnowing down the award to less than half of the original claim. Thus, they achieved a significant benefit by maintaining their objection and are prevailing parties under the statute.

¶ 9. The estate asserts that only one party can be a prevailing party under the statute based upon inclusion of the definite article "the," which, it claims, is a word of limitation when construing a statute. Other

than a citation to BLACK'S LAW DICTIONARY, however, the estate provides no legal authority for this construction of the statute. We disagree with this extremely literal and artificial interpretation of the language in the statute. Despite the use of the word "the," we conclude that the statute on its face does not limit the prevailing party to a single party. Rather, the prevailing party can include any parties on the winning side. Thus, the statute may encompass multiple interested parties who register objections and defend jointly through their respective counsels. In this case, all the parties—the estate, Franco and Scott—were united in defeating the claim.

¶ 10. The estate also argues that Franco and Scott were not entitled to attorney fees because the personal representative aggressively challenged the claim. The estate relies upon *Irving v. Sheldon*, 249 Wis. 430, 24 N.W.2d 875 (1946), and *Runge v. Schwann*, 263 Wis. 99, 56 N.W.2d 856 (1953), to support the argument that objectors are entitled to attorney fees only if the personal representative fails to faithfully contest the claim and the estate as a whole benefits from the intervention. This proposition, known as the "equitable extraordinary circumstances" doctrine was explained in *Irving*:

> It is the duty of the administrator to protect and conserve the estate committed to his care, and where the interest of an administrator is adverse to the estate the intervention by a legatee may be reasonably necessary and prudent, and where the result of such intervention adds to the estate or trust fund, a finding that the legatee so intervening is equitably entitled to reasonable compensation from the estate or trust fund presents no error of law.

*Irving*, 249 Wis. at 432–33.[4] *See First Wis. Trust Co.*, 22 Wis. 2d at 217 (a defending beneficiary is entitled to compensation for performing watchdog function).

¶ 11. As we understand it, the estate believes that the equitable circumstances described above must exist as a condition precedent for an objector to acquire the legal status of a prevailing party under WIS. STAT. § 879.37. According to the estate, equitable extraordinary circumstances do not exist in this case for two reasons: first, Franco and Scott did not assume the obligation of the personal representative; and second, the net result of the objectors' refusal to settle the claim was to reduce the estate by $20,672.13, a figure arrived at by adding together the amount of the award and the attorney fees expended on behalf of the estate and the objectors.[5]

¶ 12. The estate fails to understand that the line of cases establishing the "equitable extraordinary circumstances" doctrine has no application to WIS.

---

[4] In *Irving v. Sheldon*, 249 Wis. 430, 431, 24 N.W.2d 875 (1946), an executor approved his own claim against the estate as a creditor. A beneficiary of the estate challenged the claim. *Id.* The trial court allowed the claim in a diminished amount and, on appeal, the supreme court affirmed the beneficiary's award of attorney fees from the estate. *Id.* at 433. In *First Wisconsin Trust Co. v. Bischoff*, 22 Wis. 2d 209, 214–16, 125 N.W.2d 350 (1963), an unsuccessful beneficiary of a will was entitled to attorney fees when the executor, who was also the trustee, could not affirmatively represent either side without violating a fiduciary relationship.

[5] The estate includes the award in the amount of $9,843.13, the attorney fees of the personal representative in the amount of $5,434.90 and the objectors' attorney fees in the amount of $5,394.10.

Stat. § 879.37. *See Bethesda Church v. Menning*, 72 Wis. 2d 8, 22, 239 N.W.2d 528 (1976). Those cases were decided prior to 1969 when § 879.37 was enacted. Indeed, as Franco and Scott correctly note, the *Irving* and *First Wisconsin Trust Co.* cases utilized the doctrine because there was no statute in place which would permit parties to recover attorney fees under those circumstances. Reliance upon the "extraordinary equitable circumstances" doctrine is no longer necessary under the statute. Nor would it be appropriate for this court to graft the doctrine into the statute where it does not now exist. The plain language of the statute does not limit the award of attorney fees to cases where the personal representative fails to act or where the award benefits the estate. The statute simply permits the "prevailing party" to recover fees and costs. As we previously stated, a prevailing party is one who achieves the benefit he or she sought by bringing suit. This is true regardless of whether the estate is ultimately enhanced or whether the party assumed the obligation of the personal representative. Here, Franco and Scott successfully asserted the claim was worth less than $20,000 and less than the offer of settlement at $13,000. We therefore conclude as a matter of law that Franco and Scott were prevailing parties under the statute.

¶ 13. Having determined that the legal standard for a prevailing party has been satisfied, we now review the probate court's exercise of discretion in awarding the attorney fees. We note that when the probate court makes this discretionary determination, it is entirely appropriate for it to consider whether the personal representative was adverse to the objectors' interests and whether the efforts of the objectors ultimately enhanced the estate. In other words, the probate court

may not apply these factors as prerequisites to its determination of who is a prevailing party; however, it may consider them among other relevant factors when it determines whether to award fees to the prevailing party.

¶ 14. In fact, the role of the personal representative predominated the discussion at the hearing on the request for attorney fees. The estate asserted that "[b]ecause we hired competent counsel and because that counsel aggressively defended the claim against the estate by the Saucedas, we do not believe that . . . Franco and Scott[] assisted or helped in any way against this claim." Franco and Scott responded that there was "serious doubt" as to whether the personal representative was truly adverse to the claimants. As evidence, they pointed to the personal representative's trial testimony where he indicated that in his opinion the claim was worth $15,000, far more than the court ultimately awarded. In addition, the personal representative was called as an expert witness for the Saucedas at trial and, according to Franco and Scott, testified in support of the Saucedas' position.[6]

---

[6] We do not have a transcript of the trial in our record, but the testimony was referenced by counsel for Franco and Scott at the hearing on the request for attorney fees. The probate court agreed with counsel's assessment of the personal representative's testimony:

And that brings me to the next point, which [concerns the personal representative's] testimony; and, indeed, he did state, and it was difficult sometimes separating what he was saying as an expert witness, and I want to preface what I say about him by suggesting I did not suspect in the slightest respect that he was duplicitous or in any way not fairly and faithfully discharging his duties as personal representative. But he was caught in an awkward position both in respect to the estate, and in respect to the fact that he was separately an expert witness on the construction field . . . .

¶ 15. The probate court placed great weight on this evidence in its determination to award fees. In addition, the court made clear that the claims were highly suspect under the best of circumstances, yet the personal representative believed the claims had merit and, as the probate court observed, "were these objectors not involved, he would have had it in his power to resolve the claim as he saw fit." While the court did not suspect that the personal representative was duplicitous, it did recognize the inconsistent roles the representative played as both an expert witness for the claimants and a representative of the estate.

¶ 16. In comparison to Franco and Scott, the personal representative exhibited a marked lack of hostility toward the claim. Because of this, Franco and Scott justifiably feared that the representative would not fully defend the estate against the Saucedas' claim or might compromise the claim to their detriment. As the probate court stated, "the ambivalence of the personal representative about the claim" justified Franco and Scott's action in hiring separate counsel to protect their own interests and the integrity of the estate. Based on this evidence, we discern no error in the probate court's discretionary determination to award attorney fees in this case.

*By the Court.*—Order affirmed.

[T]he last thing he said on his direct examination that I took a note on was I would say $15,000.00—plus range would be a fair and just amount for all the work. So he certainly had some—a lot of factors tugging at him. And [the objectors' counsel] correctly states that were these objectors not involved, he would have had it in his power to resolve the claim as he saw fit. And whether he would have settled it for $13,000.00 or $15,000.00 plus or $10,000.00 or nothing would be a matter of speculation.