In re the estate of Harold HARTSHORNE Jr.:

Kim Hartshorne TROY, Thomas H. Hartshorne, Francis Anne Inniss, Margaret Inniss de Suarez and Margaret Bryan Carrasco Hartshorne, Appellants-Cross-Respondents,

v.

James JOHNSON and SVA Plumb Trust Company, LLC, as personal representative for the Estate of Harold Hartshorne, Jr., Respondents,

Eric HURKMAN, Richard McGeehan and Timothy J. Wrzesinski, Respondents-Cross-Appellants.

Court of Appeals

*No. 2016AP387. Submitted on briefs December 22, 2016.
—Decided August 9, 2017.*

2017 WI App 59

(Also reported in 902 N.W.2d 794.)

75

On behalf of the respondents-cross-appellants, the cause was submitted on the briefs of *Lisle W. Blackbourn* of *Godfrey, Leibsle, Blackbourn & Howarth, S.C.*, Elkhorn.

On behalf of the appellants-cross-respondents, the cause was submitted on the brief of *Sarah A. Zylstra* of *Boardman & Clark LLP*, Madison, and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown LLP*, Milwaukee.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J.   Cross-Appellants Eric Hurkman, Richard McGeehan, and Timothy Wrzesinski appeal the probate court's denial of their individual requests for attorney fees and costs from the estate of Harold Hartshorne related to the real property date-of-death valuation the personal representatives used in the inventory, interim accounting, and federal real estate tax return filings for the estate.[1] The court rejected their requests because it concluded that al-

---

[1] While the appeal and cross-appeal were pending, appellants filed a motion to dismiss their appeal, which motion we granted.

77

though they had prevailed on the valuation issue, they did not do so in an "appealable contested matter" and thus it did not have authority under the relevant statutes to order such payments. Because we conclude that the matter on which Hurkman, McGeehan, and Wrzenski prevailed was an appealable contested matter, we reverse and remand for a determination of the appropriate amount of attorney fees and costs, if any, to be awarded to them.

### Background

¶ 2. Harold Hartshorne, Jr. ("Hartshorne") passed away on October 28, 2013, leaving a will and three codicils which bequeathed portions of his approximately eighty-seven acres of real property near Geneva Lake to Hurkman, McGeehan, and Wrzesinski (collectively "nonfamily beneficiaries") and portions to Kim Hartshorne Troy ("Kim"), Thomas Hartshorne ("Tom"), Francis Anne Inniss, Margaret Inniss de Suarez, and Margaret Bryan Carrasco Hartshorne (collectively "residual beneficiaries"). Hartshorne also bequeathed the residue of the estate to the residual beneficiaries.

¶ 3. In April 2014, Tom and Kim, who were the personal representatives for the estate at that time, objected to the third codicil in which Hartshorne left approximately ten acres of property (the "third-codicil property") outright to McGeehan. Asserting Tom and Kim had "an irreconcilable conflict of interest,[2] are violating their fiduciary duty to [him], and are treating

---

[2] If Kim and Tom's objection to the third codicil succeeded, *they* would have received the ten-acre property after a life tenancy by McGeehan, whereas if they made no objection or if their objection failed, McGeehan would have received the property outright.

him unfairly," McGeehan petitioned in September 2014 for them to be removed as personal representatives and for him to be granted access to the third-codicil property. In December 2014, a hearing was held on the petition, at which Tom and Kim were the only witnesses to testify.

¶ 4. As relevant to the cross-appeal, Tom testified that following Hartshorne's death, he had appraiser Dale Hibbard complete an appraisal of the Hartshorne real property. Rather than appraising all of the parcels separately, Hibbard, with Tom's participation, "lump[ed] together" certain parcels. Hibbard's March 2014 appraisal identified the value of the third-codicil property at approximately $13,900 per acre and the entire estate's real property at approximately $3 million.

¶ 5. Tom acknowledged that in 2011, two years before Hartshorne's death, Hartshorne sold a thirty-five-acre parcel to neighbor Patrick Ryan for approximately $73,000 per acre. He also testified that in August 2014, another neighbor, Richard Driehaus, submitted a written offer to purchase the real property of the estate for $6.5 million,[3] which came out to approximately $75,000 per acre. Tom agreed that considering an estate tax rate of forty percent and other factors, valuing the real property for federal estate tax purposes at the Hibbard appraisal amount of $3 million instead of the $6.5 million amount offered by Driehaus would result in the estate incurring approximately $1.4 million less in taxes. He admitted that if the additional $1.4 million had to be paid, it would come out of the residue of the estate, and thus reduce the amount of money the residual beneficiaries, including Tom and Kim, would receive. Tom and Kim both

[3] The offer ultimately was not accepted.

testified that under the will they together receive one-third of the residue of the estate. In her testimony, Kim conceded that "the lower the appraisal on the land value, the more [she would] receive as the residue of the estate."

¶ 6.  Tom admitted that during the time he and Kim served as personal representatives the estate refused McGeehan's request to provide him with a copy of Hibbard's 2014 appraisal and did not inform McGeehan of the $6.5 million Driehaus offer until after he filed the petition to remove them as personal representatives. Tom agreed that with the estate's approximately $140,000 valuation of McGeehan's property based upon the Hibbard appraisal, if McGeehan sold his property for an amount greater than that, McGeehan would have to pay a twenty-percent capital gains tax on "the difference between the $140,000 set by the estate and whatever he sold it for."

¶ 7.  The probate court found that Tom and Kim were treating McGeehan "differently," had a "great personal stake" in the outcome of the third-codicil property, were "no longer representing . . . the interest of the estate," and were "unsuitable" to continue as personal representatives. The court ordered them removed as personal representatives, but made their removal effective January 28, 2015, so they could file the federal estate taxes that were due by that date.

¶ 8.  On that date, Tom and Kim filed an inventory with the probate court and the estate's federal estate tax return, using the values from Hibbard's appraisal as the date-of-death real property values. On April 16, 2015, Tom and Kim also filed with the probate court a petition to approve their "Interim Estate Accounting," which utilized Hibbard's appraisal values as the date-of-death values. Around this time, the

80

nonfamily beneficiaries sold their parcels to neighbor Ryan for amounts greater than the appraisal values: McGeehan sold 10.067 acres on May 20, 2015, for $2 million—fourteen times the appraisal value—with a life estate for himself; Hurkman sold 5.459 acres on June 30, 2015, for $2.2 million—twenty-seven times the appraisal value; and Wrzesinski sold 20.691 acres on April 3, 2015, for $1,325,000—two times the appraisal value.

¶ 9. Following these sales, each of the nonfamily beneficiaries filed a petition and objection challenging the date-of-death property values Tom and Kim utilized on the interim accounting, inventory, and federal estate tax return and seeking a determination by the probate court that the price at which each sold his parcel to Ryan was the correct date-of-death value of his parcel. They sought an order directing the new personal representative, SVA Plumb Trust Company, LLC, to file an amended inventory, accounting, and federal estate tax return utilizing the Ryan sales prices, instead of the Hibbard appraisal values, as the date-of-death values. The nonfamily beneficiaries also requested that the estate pay their attorney fees and costs. A trial to determine the appropriate date-of-death valuation of the estate's real property was scheduled for December 14, 2015.

¶ 10. On September 28, 2015, the residual beneficiaries moved to dismiss the nonfamily beneficiaries' petitions/objections on the basis that they failed to state a claim upon which relief may be granted. Arguing against the motion at an October 15, 2015 hearing, counsel for one of the nonfamily beneficiaries asserted Tom and Kim

> tossed us into a situation where we either pay hundreds of thousands of dollars in capital gains taxes

each or alternatively get into an audit situation with the IRS with near certainty and expose ourselves to possible underpayment penalties and interest where all the presumptions are against us.

Counsel for another nonfamily beneficiary argued:

[W]ith these extremely, extremely low valuations compared to the sale prices[,] the IRS is going to audit this. And there is going to be an underpayment penalty. And there's going to be ... litigation over that because it's ... a huge differential. The only way that it can be avoided is if there is an independent determination that has some elements of adversarial relationships or arguments whereby a more reasonable valuation is determined.

¶ 11. The probate court concluded that "[b]y undervaluing the properties the residual beneficiaries receive a benefit," and "the amounts that the former PRs [Tom and Kim] listed in [the interim accounting, inventory, and federal estate tax return] have potentially already caused the [nonfamily beneficiaries] harm." Denying the residual beneficiaries' motion to dismiss, the court determined:

So the bottom line ... is that this is a formal probate proceeding and the actions and the duties of the PR, former and current, are subject to the supervision of this Court. There have been formal objections to the interim accounts and real estate tax form filed ... by the former PRs—and in accepting the facts pled here as true and drawing all reasonable inferences in the objectors' favor, these facts could legally entitle these objectors to relief here.

¶ 12. On November 10, 2015, McGeehan filed a motion to compel discovery related to discovery requests he previously made of Kim and Tom. On November 12, 2015, the residual beneficiaries filed a petition

82

requesting that the probate court order SVA to file an amended inventory, accounting, and federal estate tax return "substituting the [Ryan] sales prices . . . in place of the [Hibbard appraisal] date of death values" that Tom and Kim had used in the January and April 2015 filings for the estate. The petition additionally requested that the court order SVA to "file a claim with the IRS . . . on behalf of the Residuary Beneficiaries, for a refund" and order that "the parties each be responsible for their attorney fees and costs."

¶ 13.   At a November 17, 2015 hearing on McGeehan's motion to compel and the residual beneficiaries' November 12 petition, the nonfamily beneficiaries had no objection to the residual beneficiaries' request that SVA be ordered to file an amended inventory, accounting, and federal estate tax return substituting in the Ryan sales values as the date-of-death values, with counsel for one of the nonfamily beneficiaries expressing, "that's what we were asking the Court to do in our own verified petition." The nonfamily beneficiaries did object, however, to the residual beneficiaries' petition request that SVA be ordered to file a claim for refund with the IRS. Counsel for one nonfamily beneficiary stated that the refund claim request would put SVA in the position where it would be taking a measure "that would theoretically benefit the residual beneficiaries, but would do harm to the specific beneficiaries and their capital gains status, tax status, with the IRS."

¶ 14.   At the hearing, the probate court noted that the date-of-death valuation of the real estate on the accounting, inventory, and federal estate tax return was the issue "contested" by the nonfamily beneficiaries. The court recognized that the residual beneficiaries' petition request that it was granting was "essentially . . . the relief that's already set for [the

83

December 14, 2015] trial by the [nonfamily] beneficiaries." The court stated that "the issue of the value of the property" would no longer be tried because of the residual beneficiaries' "concessions on the values" and their agreement with the nonfamily beneficiaries' request that the court order SVA to file an amended inventory, accounting, and federal estate tax return substituting the Ryan sales values for the Hibbard appraisal values as the date-of-death valuation for Hartshorne's real property. The court entered an order directing SVA to file such amendments.

¶ 15.  On December 15, 2015, the probate court held a hearing on the issues of attorney fees and costs and the residual beneficiaries' request for an order directing SVA to file a claim for a refund with the IRS. At the hearing, the residual beneficiaries "soften[ed]," as the court stated it, their claim-for-refund request, so that they were no longer requesting an order directing the SVA to file a claim for a refund but were only requesting that they "be given the opportunity" to obtain a new appraisal of the real estate for SVA to consider in deciding whether filing a claim for refund was warranted. They indicated that no claim for a refund would be filed if not warranted by the new appraisal.

¶ 16.  The probate court denied the residual beneficiaries' request for an opportunity to obtain another appraisal potentially leading to a refund claim, i.e., their modified claim-for-refund request. The court granted the nonfamily beneficiaries' requests for attorney fees and costs related to Tom and Kim's claim-for-refund request,[4] but denied the nonfamily beneficia

---

[4] Because neither party challenged this award of attorney fees and costs to the nonfamily beneficiaries, this portion of the judgment is affirmed.

ries' requests for fees and costs related to their petitions/objections seeking an order directing SVA to file an amended accounting, inventory, and federal estate tax return substituting the Ryan sales prices for the Hibbard appraisal values. It did so based upon its belief that while the nonfamily beneficiaries had prevailed on their petitions/objections, because there was no trial on the merits, they had not prevailed in an "appealable contested matter"—a statutory requirement for an award of such fees and costs.

¶ 17.  Initially, the residual beneficiaries filed an appeal challenging the probate court's order directing SVA to file an amended federal estate tax return substituting the Ryan sales values for the Hibbard appraisal values, the very order to which they agreed in November 2015. The nonfamily beneficiaries cross-appealed, contesting the probate court's denial of their requests for attorney fees and costs related to their petitions/objections. The residual beneficiaries subsequently filed a motion to dismiss their appeal, which we granted. Thus, what remains for our consideration is the cross-appeal of the nonfamily beneficiaries.

### *Discussion*

¶ 18.  WISCONSIN STAT. §§ 879.33 and 879.37 (2015–16)[5] respectively allow a probate court to award costs and attorney fees to the "prevailing party" in "all appealable contested matters." The court here determined the nonfamily beneficiaries were "clear[ly] . . . the 'prevailing party' " in that they "obtained their desired result for which they petitioned:   valuation of

---

[5] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

.

the real estate at the sales price instead of the under-valued Hibbard appraisal amount." The court concluded, however, that they did not prevail in an "appealable contested matter" because the court "did not make a determination on the merits after trial with regard to the value." The court expressed that "[g]iven the way this matter developed, the court is not necessarily pleased with this decision, but finds it is required under law."

¶ 19.  In their cross-appeal, the nonfamily beneficiaries contend the probate court erred in denying their requests for attorney fees and costs because they prevailed and the matter on which they prevailed was an "appealable contested matter." The residual beneficiaries argue the opposite. Resolving this dispute requires us, like the probate court, to interpret and apply the above statutes, which are matters of law we review de novo. *Strong v. Wisconsin Chapter of Delta Upsilon*, 125 Wis. 2d 107, 109, 370 N.W.2d 285 (Ct. App. 1985).

██

¶ 20.  To begin, the residual beneficiaries insist the nonfamily beneficiaries did not "prevail" because "the probate court declined to determine" the valuation of the real property. We conclude the nonfamily beneficiaries prevailed.

██

¶ 21.  "[A]n objector is a prevailing party if he or she achieves some significant benefit in litigation involving a claim against the estate." *Estate of Wheeler v. Franco*, 2002 WI App 190, ¶ 8, 256 Wis. 2d 757, 649 N.W.2d 711. Here, the nonfamily beneficiaries had objected to the date-of-death valuation utilized by Kim and Tom and petitioned for relief from the probate court in the form of an order directing SVA to file an amended accounting, inventory, and federal estate tax

return utilizing the Ryan sales prices in place of the Hibbard appraisal values. The probate court set the matter for trial. Prior to the trial, the residual beneficiaries moved to dismiss the nonfamily beneficiaries' petitions/objections and lost. The residual beneficiaries then conceded through their November 12, 2015 petition and at the November 17, 2015 hearing to entry of an order directing SVA to file an amended inventory, accounting, and federal estate tax return substituting the Ryan sales values for the Hibbard appraisal values —which substitution was precisely what the nonfamily beneficiaries had been seeking and which the residual beneficiaries had just finished fighting against with their motion to dismiss. With that concession, the court then cancelled the trial to determine the appropriate date-of-death valuation of the Hartshorne real property and as the nonfamily beneficiaries point out, entered an order "as to the exact relief [they] had sought for months," directing SVA to "prepare and file" an amended inventory, accounting, and federal estate tax return utilizing the Ryan sales prices in place of the Hibbard appraisal values. Thus, the nonfamily beneficiaries prevailed in securing precisely the relief they were seeking to achieve at the scheduled trial; and they so prevailed without having to make the slightest concession.

¶ 22. The real crux of the cross-appeal is the nonfamily beneficiaries' contention the probate court erred in concluding that the matter on which they prevailed was not an "appealable contested matter" and thus that the court did not have the statutory authority to award them attorney fees and costs, despite its expressed interest in doing so. The nonfamily beneficiaries are correct.

¶ 23. As the probate court recognized at the November 17, 2015 hearing, the date-of-death valuation of the real estate on the accounting, inventory, and federal estate tax return was the issue "contested" by the nonfamily beneficiaries. The nonfamily beneficiaries correctly assert on appeal that Tom and Kim's undervaluation of the real property in these filings was "bitterly contested," pointing out that the nonfamily beneficiaries "served discovery, named witnesses and provided expert reports," "had to defend a motion to dismiss" their petitions/objections, and nonfamily beneficiary McGeehan "filed and argued a motion to compel discovery." And in their appeal to us—prior to their appellate motion requesting dismissal of the appeal—the residual beneficiaries directly challenged the probate court's order directing SVA to file an amended federal estate tax return utilizing the Ryan sales prices as the date-of-death valuation instead of the Hibbard appraisal values. Doing so, they challenged the order sought by the nonfamily beneficiaries, which, again, the residual beneficiaries themselves had initially opposed but then agreed to before the probate court. Before the probate court and before us, the nonfamily beneficiaries' petitions/objections requesting an order directing SVA to file an amended accounting, inventory, and federal estate tax return substituting the Ryan sales values for the Hibbard appraisal values was an aggressively contested matter, which was obviously appealable in that the residual beneficiaries in fact appealed that very matter and the court's orders related thereto.[6]

---

[6] In their "Notice of Appeal," the residual beneficiaries stated that they were appealing "from the Order on December 15, 2015, Hearing, entered on January 13, 2016 . . ., and all prior nonfinal orders entered in the Circuit Court." The pro-

¶ 24. Citing to *Wolf v. Estate of Wolf*, 2009 WI App 183, 322 Wis. 2d 674, 777 N.W.2d 119, the residual beneficiaries insist an award of costs and fees is not permitted in this case because "the parties' agreement to file an amended tax return was not a litigated court proceeding." They represent that their November 12, 2015 petition and their related concession to the petitions/objections filed by the nonfamily beneficiaries amounted to an "agreement" between the parties. This is a significant mischaracterization. As the nonfamily beneficiaries phrase it, the residual beneficiaries' petition and concession to the requests of the nonfamily beneficiaries was far more appropriately termed a "capitulation" by the residual beneficiaries than an agreement between the parties. As the probate court recognized, the nonfamily beneficiaries "made no concessions or compromises" to achieve their desired result and "there was no agreement or settlement." In *Wolf*, we concluded that "where a will contest results in *settlement,* there is no appealable contested matter as that phrase is used in Wis. Stat. § 879.37." *See Wolf*, 322 Wis. 2d 674, ¶ 13 (emphasis added). The facts and history of the case now before us confirm there was no "settlement," and thus *Wolf* is not applicable.

¶ 25. Nothing in Wis. Stat. §§ 879.33 and 879.37 suggests a trial is necessary for an award of attorney fees and costs. Here, the nonfamily beneficiaries successfully fought off the residual beneficiaries' motion to

---

bate court's order of October 29, 2015, denying the residual beneficiaries' motion to dismiss the nonfamily beneficiaries' petitions/objections, and its order of December 3, 2015, directing SVA to prepare and file an amended accounting, inventory, and federal estate tax return substituting the Ryan sales prices for the Hibbard appraisal values, were both "prior nonfinal orders," and thus were appealed by the residual beneficiaries.

dismiss the nonfamily beneficiaries' petitions/objections seeking an order directing SVA to file an amended inventory, accounting, and federal estate tax return substituting the Ryan sales prices for the Hibbard appraisal values. Following this loss and the subsequent filing by McGeehan of a motion to compel discovery, the residual beneficiaries conceded to the very order the nonfamily beneficiaries were seeking, and the probate court entered such an order. Where a party concedes nothing and an opposing party capitulates before the court to the very best outcome the first party could have achieved if the matter had proceeded to trial, the first party has prevailed. That is what happened here. And on appeal the residual beneficiaries resumed their challenge to the nonfamily beneficiaries' requests to have the probate court order SVA to file an amended accounting, inventory, and federal estate tax return substituting the Ryan sales prices for the Hibbard appraisal values. We conclude the nonfamily beneficiaries "prevailed" in an "appealable contested matter[]," and we remand to the probate court for a determination as to what amount of attorney fees and costs, if any, is appropriate.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.