DUGAN, J.
¶1 M. Samir Siddique appeals an order denying his motion for costs and attorney fees under the Wisconsin Equal Access to Justice Act (WEAJA), WIS. STAT. § 814.245 (2015-16).[1]
¶2 This case arises from Siddique's conduct in the wake of a University of Wisconsin-Milwaukee (UWM) student government election in 2013 and sanctions that were imposed upon him for that conduct. Siddique appealed the imposition of the sanctions and when his appeals were denied, he commenced this action against the Board of Regents University Wisconsin System (the Board) and individuals associated with UWM in the Milwaukee County Circuit Court alleging three causes of action: (1) judicial review of the administrative decision imposing the sanctions; (2) civil rights violations; and (3) public records violations. While the action was pending, UWM voluntarily voided the sanctions and the action was dismissed as moot. Siddique challenges the trial court's determinations that pursuant to the WEAJA he was not a prevailing party and that the Board was substantially justified in taking its position.
¶3 We conclude that because Siddique was not a prevailing party under the WEAJA he was not entitled to an award of fees under that statute. Therefore, we affirm.
BACKGROUND
¶4 In 2013, Siddique initially ran for president of the "Student Association at UWM," the student government recognized by UWM. However, prior to the election, he withdrew his candidacy because he had reached an agreement with another student presidential candidate to withdraw, in exchange for a promised appointed position within the Student Association.[2]
¶5 After becoming aware of issues with the 2013 elections, the Chancellor at the time decided that UWM would not recognize the election result. Subsequent elections were held in 2014, but Siddique did not run for office. Instead, he refused to accept the legitimacy of the student government elected in 2014 and created an organization called the "UWM Student Association." Siddique held himself out as the president of this "UWM Student Association," distributing flyers and other materials for his group, causing confusion among the students. Siddique's association was not affiliated with the recognized student government group, and he was asked to stop his activities. He did not stop, which led to disciplinary measures imposed by UWM's Dean of Students.
¶6 The central issue before this court is whether Siddique was a prevailing party in this action pursuant to the WEAJA. The following facts focus on that issue.
¶7 In a letter dated July 11, 2014, the Dean of Students determined that Siddique had committed nonacademic misconduct by: (1) disrupting university-authorized activities; (2) violating university rules regarding the use of UWM's name; and (3) making false statements by representing himself as the student body government president. As sanctions, the Dean required Siddique to complete eight hours of community service, to "immediately stop all communications, representations, and other related activity regarding [Siddique's] representation and association" with Siddique's association, including any representations that Siddique's association was the officially recognized student government at UWM or that it was even officially recognized by UWM, and to write a letter to students admitting that Siddique's association was not the official student body government and was not recognized by UWM.
¶8 Siddique appealed and after a hearing, UWM's Nonacademic Misconduct Hearing Committee (Misconduct Committee) upheld the disciplinary findings and the sanctions. Siddique then sought review from the Board of Regents of the University of Wisconsin System. By the time of the review, UWM had decided not to enforce the portion of the sanction that required Siddique to write a letter to students admitting that Siddique's association was not the official student body government and was not recognized by UWM. Therefore, that sanction was no longer before the Board. In a written decision and order, the Board declined Siddique's request for review of the Misconduct Committee's decision.
¶9 Siddique then filed a summons and complaint in the Milwaukee County Circuit Court on December 11, 2014, alleging three causes of action: (1) judicial review of the administrative decision; (2) civil rights violations; and (3) public records violations.[3] The Board filed a motion to dismiss on grounds which included that Siddique had not timely served the Board with the summons and complaint, and that the civil rights and open records claims were duplicative of Siddique's claims in another pending case, UWM Student Association v. Lovell , Milwaukee County Circuit Court case No. 2014CV4396.
¶10 The trial court granted the motion to dismiss on July 22, 2015. It determined that the petition for judicial review had not been timely served on the Board, depriving the court of subject matter jurisdiction, and the civil rights and open records claims were duplicative of Siddique's claims in the other pending case. Siddique moved for reconsideration only with respect to dismissal of the judicial review claim. The trial court denied the motion.
¶11 Siddique appealed, raising only issues regarding the petition for judicial review. He did not challenge the dismissal of his civil rights and open records claims. On appeal, the Board conceded that the trial court erred in finding that the petition for judicial review had not been timely served on the Board. On July 21, 2016, this court reversed the trial court's order granting the motion to dismiss in part, and remanded the matter to the trial court for further proceedings.
¶12 By September 2016, the case was still pending, but Siddique had graduated from UWM and was no longer a student there. At a status conference on September 27, 2016, the Board's counsel informed the trial court that there had been discussions with Siddique's trial counsel that in the interest of preserving the time and resources of the court and parties, the discipline decision might be reversed in light of the fact that Siddique was no longer a student. The Board's counsel further stated that the only remaining sanction was the community service. The Board's counsel went on to explain that if the Board "would simply be willing to reverse the discipline" that, in essence, would "remove the remaining claim" and there would be no need for further litigation.
¶13 Siddique's counsel responded that the Board's counsel's statement was "essentially true." He further stated, "Well, if they reverse it all together, then we would have no-we would have no complaint with them. We would have one [sic] essentially in the administrative review, and there would be nothing for us to be appealing here."
¶14 On October 31, 2016, the Board moved to dismiss the case as moot, attaching a letter that formalized UWM's unilateral voiding of the disciplinary action. The trial court held a hearing on the motion to dismiss on February 27, 2017. At that hearing, the Board's counsel argued that the Board made it clear that the discipline was reversed, "not because it didn't believe it had grounds or substantial grounds on which to impose the initial discipline, [it] agreed to simply reverse the discipline." Contrary to his position at the September 27, 2016, status conference, Siddique's counsel argued that "[s]ince [Siddique] has not obtained declaratory and injunctive relief in this matter, he still has pending relief before the [trial] court, and that makes the matter not moot and the [trial] court should not dismiss it." The trial court concluded the hearing by orally granting the motion to dismiss on the ground that the case was moot. On March 13, 2017, the trial court entered a written order granting the motion to dismiss.
¶15 On November 21, 2016, prior to dismissal of the action, Siddique moved for an award of costs and fees pursuant to WIS. STAT. "§§ 814.245, 814.205,[4] & 805.03, inter alia ." At a hearing on June 12, 2017, the trial court denied the motion in an oral decision. It found that under the WEAJA Siddique was not a prevailing party and that the Board was substantially justified in taking its position in this case. The trial court then issued a brief order denying the motion.
¶16 This appeal followed.[5]
STANDARD OF REVIEW AND APPLICABLE LAW
¶17 Statutory interpretation is a question of law that this court reviews de novo , benefitting from the trial court's analysis. See C. Coakley Relocation Sys. Inc. v. City of Milwaukee , 2008 WI 68, ¶14, 310 Wis. 2d 456, 750 N.W.2d 900. The decision whether a party is a prevailing party "involves the application of facts to a particular legal standard, which is a conclusion of law that we review independently." See Estate of Wheeler v. Franco , 2002 WI App 190, ¶6, 256 Wis. 2d 757, 649 N.W.2d 711. See also Nottelson v. DILHR , 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980) (stating that whether facts fulfill a particular legal standard is a question of law).
¶18 Pursuant to the WEAJA, a trial court must award fees when the statutory prerequisites are met:
[I]f an individual ... is the prevailing party in any action by a state agency ... and submits a motion for costs under this section, the court shall award costs to the prevailing party, unless the court finds that the state agency was substantially justified in taking its position or that special circumstances exist that would make the award unjust.
WIS. STAT. § 814.245(3). As relevant to this case, under the statute two conditions must be met before the court is required to award a party attorney fees: (1) the party is the prevailing party; and (2) the state agency was not substantially justified in taking its position, or special circumstances exist that would make the award unjust.
¶19 We conclude that Siddique was not a prevailing party under the WEAJA and, therefore, was not entitled to an award of attorney fees.[6]
DISCUSSION
I. Siddique's "significant benefit/substantial benefit" test and catalyst test argument
¶20 Siddique argues that he was a prevailing party under the WEAJA because he obtained a significant benefit through litigation. He asserts that he qualifies as a prevailing party under the "significant benefit/substantial benefit" test[7] and/or the "catalyst test." He argues that under the substantial benefits test, a party has prevailed if he or she succeeds on any significant issue in litigation which achieves some of the benefit sought by bringing suit. Further, he states that to obtain fees under the test the claimant must obtain a substantial benefit in litigation, which is satisfied when a party establishes a legal entitlement to any kind of substantive relief, including a temporary injunction.
¶21 Siddique also argues that he is a prevailing party under the "catalyst" test. He asserts that under this test it is not required that a court or an agency enter any order affecting relief-one party can provide the relief requested by the other party voluntarily and the requesting party is regarded as having prevailed if the lawsuit was a substantial cause of the relief being given. He argues that he is a prevailing party because the Board voided his disciplinary sanctions due to this lawsuit.
¶22 In support of this contention, he argues that the WEAJA and federal case law as of 1985 support application of the catalyst test. He cites the WEAJA which states in part:
The legislature intends that courts in this state, when interpreting this section, be guided by federal case law, as of November 20, 1985, interpreting substantially similar provisions under the federal equal access to justice act, 5 USC 504.
He then cites pre-1985 case law that applied the catalyst test in determining whether a party was a prevailing party. Siddique then asserts, without citing any authority, that the statutes must be applied as interpreted by federal cases decided before November 20, 1985.
¶23 We disagree.
II. Siddique is not a prevailing party under the WEAJA or case law
¶24 The WEAJA does not state that when interpreting the statute courts are to be guided by federal case law as if frozen on November 20, 1985. The WEAJA was created by 1985 Wis. Act 52, § 4, and became effective on November 20, 1985. The law did not exist prior to that date, but the Federal Equal Access to Justice Act (FEAJA) did exist prior to that date and the language in the WEAJA is substantially similar to the FEAJA.
¶25 Contrary to Siddique's argument, Wisconsin cases have cited post-1985 federal cases in interpreting the WEAJA. In Sheely v. DHSS , 150 Wis. 2d 320, 328, 442 N.W.2d 1 (1989), the Wisconsin Supreme Court stated that in interpreting the WEAJA and WIS. STAT. § 227.485, which contains similar language, "Our interpretation of these statutes is to be guided by federal case law ... interpreting substantially similar provisions under the federal equal access to justice act, 5 USC 504." Sheely , 150 Wis. 2d at 328 (citations and internal quotation marks omitted). It did not hold that courts must apply the federal case law as it existed on November 20, 1985. In fact, the Sheely court cited federal cases that were decided after 1985 in support of its holding involving the meaning of "substantially justified" under the WEAJA, and when the thirty days that a party has to file a claim for fees begins to run.[8] Id. at 330-31, 337-38. Also in Stern v. DHFS , 212 Wis. 2d 393, 402-03 n.7, 569 N.W.2d 79 (Ct. App. 1997), this court relied upon Wonders v. Shalala , 822 F. Supp. 1345, 1348 (E.D. Wis. 1993), in interpreting the WEAJA. The Stern court explained, "Our interpretation of [the WEAJA] is guided by federal case law interpreting substantially similar provisions of the [FEAJA]." Id ., 212 Wis. 2d at 403 n.7.
¶26 Additionally, this court has expressly held that courts cannot rely on pre-November 20, 1985 FEAJA cases to interpret the WEAJA if subsequent federal cases overruled them. In Susie Q Fish Co., Inc. v. DOR , 148 Wis. 2d 862, 867-68, 436 N.W.2d 914 (Ct. App. 1988), this court
[c]onclude[d] that after Pierce v. Underwood , [487 U.S. 552, 559-63 (1988),] the federal cases upon which [Susie Q] relies are no longer authority as to the meaning of "substantially justified" as used in the federal EAJA. The decision of the Court, although rendered in 1988, has effectively overruled federal cases decided as of November 20, 1985 which are contrary to the Court's construction of the federal EAJA.
The holdings in Susie Q , Sheely , and Stern apply equally to the term prevailing party in the WEAJA.
¶27 Thus, as directed by the WEAJA, we are to be guided by federal case law regarding the interpretation of the term prevailing party. In our analysis, we are persuaded by the United States Supreme Court's holding in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Heath & Human Resources , 532 U.S. 598 (2001). In that case, the court stated that "[t]he question presented here is whether this term [prevailing party] includes a party that has failed to secure a judgment on the merits or a court ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Id. at 600. The court concluded "We hold that it does not." Id .
¶28 In Buckhannon , the petitioners asserted that they were entitled to attorney fees as the prevailing party under the Fair Housing Amendments Act of 1988 (FHAA), which provides in part that "[T]he court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee and costs," and under the Americans with Disabilities Act of 1990 (ADA), which provides in part, "[T]he court ..., in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses and costs." Buckhannon , 532 U.S. at 601 (citations omitted). The court noted that the petitioners argued that they were entitled to attorney fees under the catalyst theory, "which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Id .
¶29 The court explained that under those acts, "Congress employed the term 'prevailing party,' a legal term of art." Id . at 603. It explained that "[t]his view that a 'prevailing party' is one who has been awarded some relief by the court can be distilled from our prior cases." Id . It stated that its prior decisions taken together "establish that enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney fees." Id . at 604 (citation and internal quotation marks omitted). Further, the court cited Hanrahan v. Hampton , 446 U.S. 754, 757 (1980), for the proposition that "[i]t seems clearly to have been the intent of Congress to permit ... an interlocutory award only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." Buckhannon , 532 U.S. at 604 (emphasis omitted).
¶30 In rejecting the catalyst theory, the Supreme Court stated that the theory "allows an award [of attorney fees] where there is no judicially sanctioned change in the legal relationship of the parties." Id . at 605. The court went on to state, "This is not the type of legal merit that our prior decisions, based upon plain language and congressional intent, have found necessary." Id . The court then stated that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Id . Further, it explained that "Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties." Id .
¶31 Although the Buckhannon court interpreted the term prevailing party under the FHAA and the ADA, federal courts have concluded that the court's interpretation of prevailing party applies to the FEAJA. Jeroski v. Federal Mine Safety & Health Review Commission , 697 F.3d 651, 653 (7th Cir. 2012), notes that all eight federal circuit courts of appeals that had considered whether Buckhannon 's interpretation of prevailing party applies to the FEAJA have concluded that it does apply. The court went on to state that "The [Supreme] Court's approach in Buckhannon supports the position that eight circuits have taken with respect to the meaning of 'prevailing party,' and we bow to this heavy weight of authority." Jeroski , 697 F.3d at 655. We agree with the federal courts' analysis and interpretation of the term "prevailing party" as it applies to the WEAJA.
¶32 Thus, under the holding in Buckhannon , before Siddique would be entitled to an award of attorney fees under the WEAJA, he must have prevailed by securing a judgment on the merits in this case-he has not done so. The Board's counsel advised the trial court that the Board would be voiding the disciplinary sanctions against Siddique in the interest of preserving the time and resources of the court and the parties because Siddique was no longer a student and because the only remaining discipline was the community service. UWM then unilaterally voided the disciplinary sanction against Siddique and removed it from his school record. As the Buckhannon court stated, "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Id. , 532 U.S. at 605.
¶33 Further, Siddique did not obtain any relief from the trial court. The trial court never addressed the merits of this case. It dismissed the case on the grounds that it was moot because the Board voluntarily voided the sanction. Therefore, we conclude that Siddique is not a prevailing party under the WEAJA.
CONCLUSION
¶34 For the reasons stated above, we conclude that Siddique was not a prevailing party under the WEAJA and, therefore, he is not entitled to an award of attorney fees in this case.
By the Court .-Order affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

This case was dismissed as moot before factual issues were joined. The factual background is derived from the trial court transcripts and its written decision granting UWM's motion to dismiss, Siddique's complaint, and this court's decision addressing an earlier issue in this case, see Siddique v. Board of Regents of the University of Wisconsin System , No. 2015AP2049, unpublished slip op. (WI App July 21, 2016).

The complaint named the Board and several employees of UWM.

We assume this is a typographical error because Wis. Stat. § 804.205 does not exist. Although Siddique's motion referenced § 814.205, his briefs in support of the motion do not reference the statute. We further note that Wis. Stat. § 814.025 dealt with awarding costs upon frivolous claims, that statute was repealed effective July 1, 2005. See S. Ct. Order 03-06 § 1, 278 Wis. 2d xiii (eff. July 1, 2005).

On appeal, Siddique contests only the order denying his motion for fees-not the trial court's dismissal of the action. He states, "This appeal concerns only the availability of fees, and not their amount, or availability of other relief."

Because we conclude that Siddique was not a prevailing party, we do not address whether the Board was substantially justified in taking its position. See, e.g. , Maryland Arms Ltd. P'ship v. Connell , 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 (stating, "[t]ypically, an appellate court should decide cases on the narrowest possible grounds").

Siddique uses both terms interchangeably.

Sheely v. DHSS , 150 Wis. 2d 320, 330, 337-38, 442 N.W.2d 1 (1989), cites MacDonald Miller Co. v. N.L.R.B. , 856 F.2d 1423, 1424 (9th Cir. 1988) ; J-I-J Construction Co., Inc. v. United States , 829 F.2d 26, 29 (Fed. Cir. 1987) ; Sonicraft, Inc. v. N.L.R.B. , 814 F.2d 385, 386 (7th Cir. 1987) ; Auke Bay Concerned Citizen's Advisory Council v. Marsh , 779 F.2d 1391, 1393 (9th Cir. 1986) ; Pierce v. Underwood , 487 U.S. 552, 559-63 (1988) ; Phil Smidt & Son, Inc. v. N.L.R.B. , 810 F.2d 638, 642 (7th Cir. 1987) ; and Thomas v. Peterson , 841 F.2d 332, 335 (9th Cir. 1988) (cases are listed in the order of their citation in Sheely ).